Present: Hassell, C.J., Koontz, Kinser, Lemons, Agee, and Goodwyn, JJ., and Carrico, S.J.

MALCOLM PARKER

                                        OPINION BY
v.  Record No. 070703          SENIOR JUSTICE HARRY L. CARRICO
                                       January 11, 2008
COMMONWEALTH OF VIRGINIA


FROM THE COURT OF APPEALS OF VIRGINIA

A jury convicted the defendant, Malcolm Parker, of the felony of obtaining money in excess of $200.00 under false pretense in violation of Code § 18.2-178.  The jury fixed the defendant's punishment at four months in the Fairfax County Adult Detention Center and a fine of $2,500.00.  The trial court denied the defendant's motion to set aside the verdict, imposed the sentence fixed by the jury, and imposed an additional two-year term suspended subject to post-release supervision pursuant to Code § 19.2-295.2.

In an unpublished opinion, a three-judge panel of the Court of Appeals of Virginia, with one judge dissenting, reversed the defendant's conviction.  Upon rehearing en banc, a majority of the court, by order, vacated the panel's mandate and affirmed the trial court's judgment for the reasons stated in the panel's dissenting opinion.  We awarded the defendant this appeal.

FACTUAL BACKGROUND

The evidence shows that in late March of 2003, Steven Michael Needels, an undercover detective of the Fairfax County

Police Department, telephoned Brittany A. Seiler to arrange the purchase of 150 pills of ecstasy, a controlled amphetamine. Needels had been in contact with Brittany previously, but she did not know he was a detective. Brittany was the defendant's girlfriend, and he was in the room with her when Needels called to arrange the ecstasy purchase. The defendant told Brittany the price to quote, and a figure of $2,350.00 for 150 ecstasy pills was agreed upon by Needels and Brittany.

Needels and Brittany arranged to meet at a parking lot on April 1 to consummate the transaction. Needels arrived at the appointed time in possession of $2,350.00 belonging to the Fairfax County Police Department. Brittany arrived shortly thereafter in a vehicle driven by the defendant who had supplied her with 150 fake ecstasy pills to give to Needels. Brittany left the defendant's vehicle and entered Needels' automobile.

According to Needels' testimony, Brittany took an "orangish pill bottle" from her purse, handed it to him, and said, "these are the pills." He handed her the $2,350.00 and "opened the [bottle of] pills." Thinking "they didn't look like real ecstasy pills," he asked Brittany if she was "sure these are real." She replied, "yeah, they're real," and quickly left the car.

When asked why he gave Brittany the money in spite of his doubt about the pills, Needels said he gave her the money

2

"because on past experience with her [he had not] had a problem." When pressed later in his testimony about the order in which things "happened inside the car," Needels said: "Whether I opened the pills before I handed her the money or it happened simultaneously, honestly I'm not clear on that."

However, when Brittany testified as a witness for the Commonwealth, she was clear about the order in which things happened. While under cross-examination by defense counsel, she was shown the "bottle of fake pills," and the following repartee ensued:

Q. You handed that bottle to Needels?
A. Yes.
Q. Didn't he look at the pills?
A. Yes.
Q. Did he tell you they were fake?
A. He said they looked fake.
Q. And didn't you say no, they're real?
A. Yes.
Q. Didn't he then give you the money?
A. Yes.
Q. And you left?
A. Yes.

When Brittany left Needels' automobile, she entered the defendant's vehicle and gave him the $2,350.00. He gave her $300.00 as her share. She was arrested later the same day and charged with obtaining money under false pretense.

After the defendant and Brittany departed the parking lot, Needels field-tested the pills and found they were not ecstasy.

Later laboratory tests confirmed that the pills were not ecstasy.

## ANALYSIS

Code § 18.2-178 provides in pertinent part that "[i]f any person obtain, by any false pretense or token, from any person, with intent to defraud, money . . . he shall be deemed guilty of larceny thereof." A criminal false pretense has been defined as follows:

> [T]he false representation of a past or existing fact, whether by oral or written words or conduct, which is calculated to deceive, intended to deceive, and does in fact deceive, and by means of which one person obtains value from another without compensation. According to the definition, the false pretense must be a representation as to an existing fact or past event. False representations amounting to mere promises or statements of intention have reference to future events and are not criminal within the statute, even though they induce the party defrauded to part with his property. But if false representations are made, some of which refer to existing facts or past events, while others refer solely to future events, a conviction may be had if it is shown that any of the representations as to existing facts induced the complaining witness to part with his property.

Hubbard v. Commonwealth, 201 Va. 61, 66, 109 S.E.2d 100, 104 (1959) (citations and internal quotation marks omitted).

In a prosecution under the statute, the Commonwealth must prove four elements, as follows:

> (1) [A]n intent to defraud; (2) an actual fraud; (3) use of false pretenses for the purpose of perpetrating the fraud; and (4) accomplishment of the fraud by means of the false pretenses used for the purpose, that is, the false pretenses to some degree must have induced the owner to part with his property.

*Riegert v. Commonwealth*, 218 Va. 511, 518, 237 S.E.2d 803, 807 (1977) (citation and internal quotation marks omitted).

The defendant's sole contention is that the Commonwealth failed to prove element (4), relating to inducement. "The true enquiry," therefore, "is whether the false pretense, either operating alone or with other causes, had a controlling influence, or that without such pretense the owner would not have parted with his goods." *Trogdon v. Commonwealth*, 72 Va. (31 Gratt.) 862, 884-85 (1878).

"[U]pon appellate review, the evidence and all reasonable inferences flowing therefrom must be viewed in the light most favorable to the prevailing party in the trial court." *Commonwealth v. Hudson*, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003) (citations and internal quotation marks omitted). Accordingly, in this case, we view the evidence in the light most favorable to the Commonwealth.

The defendant states that the "first step in the analysis is to identify the false pretense." The defendant then argues that Brittany's statement that "these are the pills" does not qualify as a false pretense. The defendant says the statement "is not in fact false" because the bottle actually contained pills.

The defendant maintains that the false pretense did not come until later in the transaction when Brittany told Needels the pills were real.  By then, according to the defendant, Needels had already given Brittany the money and had seen for himself that the pills were fake.

The defendant says that "[f]undamentally, . . . Detective Needels expected [Brittany] Seiler to give him 150 pills of ecstasy . . . but his expectation was not induced by a false representation of past or present fact."  Instead, the defendant asserts, Detective Needels' expectation was founded solely "on past experience with her [when he did not have] a problem." And, the defendant concludes, "[b]ecause the Commonwealth did not prove that Detective Needels parted with the buy funds in reliance on a false representation of past or present fact, [the defendant] could not have been guilty as a principal in the second degree."

We disagree with the defendant.  In the first place, according to Needels' testimony, "these are the pills" were the first words Brittany uttered after she entered Needels' automobile.  We hold that this statement was a false pretense. Brittany did not say "these are pills."  She said, "these are the pills" (emphasis added), meaning, in the context of the sale transaction that these were the ecstasy pills Needels had arranged to buy.  It is undisputed that Brittany made the

6

statement before Needels gave her the money or anything else transpired.

Moreover, if the jury believed Brittany's testimony, as it was entitled to do, it could reasonably have found that Needels did not give her the money until after she had told him the pills were real. Brittany testified very clearly that she handed the pill bottle to Needels, he looked at the pills and said they "looked fake," she said "no, they're real," and he "then [gave her] the money" (emphasis added).

Finally, Needels' statement that he gave Brittany the money because of his "past experience" with her does not necessarily preclude a finding that his expectation of what Brittany would give him was induced by a false representation of past or present fact. Rather, the jury could reasonably have interpreted Needels' statement to mean that he had chosen to believe Brittany's representations that "these are the pills" and that the pills were "real" because he had found her truthful in the past and thought he could rely upon her assurances of authenticity under the then existing facts.

## CONCLUSION

As in Trogdon, under the evidence in this case, whether Needels, "without such pretense . . . would not have parted with his goods . . . was peculiarly [a question] for the jury." 72 Va. (31 Gratt.) at 885. And this Court "cannot set aside the

7

[jury's] verdict unless the finding is shown to be either in conflict with or wholly unsupported by the evidence." Id. The verdict in this case suffers from neither fault, and we will therefore affirm the Court of Appeals' judgment.

Affirmed.