COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Elder and Alston
Argued by teleconference


MICHELLE DIANE LINDSEY

                                                MEMORANDUM OPINION[*] BY
v.        Record No. 2691-09-2                  JUDGE LARRY G. ELDER
                                                    MARCH 1, 2011
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF HANOVER COUNTY
                        Horace A. Revercomb, III, Judge

            Andrea C. Long (Brian S. Foreman; Bowen, Champlin, Foreman &
            Rockecharlie, on brief), for appellant.

            Donald E. Jeffrey, III, Senior Assistant Attorney General
            (Kenneth T. Cuccinelli, II, Attorney General, on brief), for
            appellee.


        Michelle Diane Lindsey (appellant) appeals from her jury trial convictions for obtaining

$200 or more by false pretenses in violation of Code § 18.2-178 and giving material false

testimony under oath in violation of Code § 18.2-434.  On appeal, she contends the trial court

erred in refusing to allow her to cross-examine one of the Commonwealth's witnesses, who had

filed a cross-claim against her in a related civil suit, for possible bias.  The Commonwealth

contends that appellant failed to preserve this assignment of error for appeal, that it lacks merit,

and that, even if error, it was harmless.  We hold that appellant preserved the issue for appeal,

that the trial court's limitation on cross-examination was error, and that the error was harmless.

Thus, we affirm the challenged convictions.

_____
        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I.  BACKGROUND

The evidence, viewed in the light most favorable to the Commonwealth, see, e.g., Parker v. Commonwealth, 275 Va. 150, 155, 654 S.E.2d 580, 583 (2008), establishes that in the spring of 2007, while appellant was employed as a paralegal for a law firm, she and her husband contracted to purchase a home.  A few weeks later, appellant went to work for a different employer, attorney John Goots, and Goots agreed to serve as appellant's attorney for purposes of the real estate closing.  Goots, believing appellant had deposited in his firm's real estate escrow account funds in excess of the amount needed for closing, authorized appellant to write two checks to herself from that account for the anticipated excess.  Goots signed the checks, which were for the total amount of $4,540.82, and appellant cashed them.  Unbeknownst to Goots, no funds for appellant's home purchase had been deposited in his escrow account at that time, and no such funds ever were deposited in his escrow account.  Also, although appellant took possession of the residence, the seller never received appellant's payment for it.

Following an investigation, appellant was charged, *inter alia*, with obtaining $200 or more from Goots by false pretenses with an intent to defraud, and a hearing related to that charge was scheduled.  Appellant failed to appear for the hearing, and a capias for her arrest was issued. Appellant contacted the sheriff's department and made arrangements to turn herself in a few days later.  When she appeared before a magistrate, she had a kerchief on her head and represented under oath to the magistrate that she was then undergoing chemotherapy for cancer.  She presented a letter ostensibly from her treating physician, which purported to confirm the fact of her treatment during the relevant time period.  The magistrate accepted the letter as authentic and released appellant on an unsecured bond.  Following the Commonwealth's receipt of information leading it to believe the letter ostensibly from appellant's treating physician was a forgery, appellant was charged with giving material false testimony under oath.

After appellant's trial, conviction, and sentencing for the instant offenses, she noted this appeal.

## II.  ANALYSIS

### A.  RESTRICTION OF CROSS-EXAMINATION FOR BIAS

"An accused has a right to cross-examine prosecution witnesses to show bias or motivation[,] and that right, when not abused, is absolute.  The right emanates from the constitutional right to confront one's accusers."  Brown v. Commonwealth, 246 Va. 460, 463-64, 437 S.E.2d 563, 564-65 (1993); see Davis v. Alaska, 415 U.S. 308, 315-18, 94 S. Ct. 1105, 1110-11, 39 L. Ed. 2d 347, 353-55 (1974) (holding the Sixth Amendment's Confrontation Clause requires a defendant to have some opportunity to show bias on the part of a prosecution witness).  "A successful showing of bias on the part of a witness would have a tendency to make the facts to which he testified less probable in the eyes of the jury than it would be without such testimony."  United States v. Abel, 469 U.S. 45, 51, 105 S. Ct. 465, 468, 83 L. Ed. 2d 450, 457 (1984).  "So absolute is this right to cross-examine for bias that it takes precedence over other rules of evidence and even over statutory enactments."  Charles E. Friend, The Law of Evidence in Virginia § 4-6(a), at 157 (6th ed. 2003); see Davis, 415 U.S. at 318-19, 94 S. Ct. at 1111-12, 39 L. Ed. 2d at 355-56 (upholding right to cross-examine a prosecution witnesses about juvenile offenses to show bias despite statute protecting juvenile matters from disclosure); Banks v. Commonwealth, 16 Va. App. 959, 962, 434 S.E.2d 681, 683 (1993) (upholding admission of "[e]vidence of specific acts of misconduct to show bias or motive to fabricate," even though inadmissible if offered merely for impeachment).

Here, when the Commonwealth objected to appellant's attempt to inquire about the civil charges proffered to be pending against attorney John Goots, one of the Commonwealth's primary witnesses, the trial court observed that it might be relevant to "a question of bias . . . or

an interest in the subject matter." Appellant's counsel responded that "the jury has a right to know when an individual who's testifying has an interest in the sequence and series of events about which they're testifying[,] . . . a stake in the overall action." Counsel proffered to the trial court in more detail that appellant and Goots were co-defendants in a pending civil matter arising out of the same real estate transaction from which appellant's criminal charges stemmed and that Goots, in fact, had filed a cross-claim against appellant in that matter.[1] Counsel argued further that "proceedings indicate [Goots] had to pay $5000 for his malpractice carrier" and that, in that context, as well, Goots "could benefit" if appellant were found guilty of the charged crimes.

These arguments make clear that appellant's counsel preserved for appeal the claim that evidence of the pending civil suit, Goots' related claim against appellant, and his payment of $5,000 to his malpractice carrier was relevant to whether Goots had an incentive to fabricate or slant his testimony about the real estate transaction and appellant's involvement therein. See Rule 5A:18.

The record also establishes, on the merits, that the trial court erred in refusing to let appellant cross-examine Goots about these issues in an attempt to show bias. The Commonwealth argues the fact of appellant's criminal responsibility, if any, would not be admissible in the civil proceedings and, thus, that the trial court correctly ruled the pendency of the civil proceedings against appellant and Goots was not relevant. We disagree with this conclusion. The fact and nature of the civil charges against Goots were relevant at the criminal trial to show Goots had a motive to implicate appellant in a way that would absolve Goots of any potential liability in the civil suit. Regardless of whether evidence of appellant's criminal

---

[1] At trial, appellant's counsel referred to Goots' claim against appellant as a counterclaim. However, if appellant and Goots were co-defendants as counsel also argued, Goots' claim against appellant was a cross-claim rather than a counterclaim. See Rules 3:9, 3:10. We therefore use the term cross-claim in this opinion.

conviction would have been admissible in the civil trial, Goots was subject to impeachment on cross-examination in the civil suit if he gave testimony at odds with his testimony in appellant's criminal trial. Further, appellant proffered that the real estate transaction had a financial impact on Goots and his malpractice insurance coverage. Admission of evidence of the existence of the civil charges against Goots in a suit in which appellant was a co-defendant, the cross-claim Goots had filed against appellant in that same suit, and the impact the transaction had on Goots' malpractice insurance would have provided a basis for appellant to argue Goots had motivation to give less than truthful testimony at appellant's criminal trial. Cf. Whittaker v. Commonwealth, 217 Va. 966, 967, 234 S.E.2d 79, 81 (1977) (noting the fact that a witness received lenient sentences in exchange for his testimony against a defendant is "highly relevant" because it "lay[s] the predicate for an inference that the testimony . . . was biased and unreliable because induced by considerations of self-interest"). The trial court's reasoning that admission of evidence concerning the existence of the civil suit was likely to confuse the jury was insufficient to justify exclusion of this evidence to the extent it was probative of Goots' possible bias.

## B. IMPACT OF THE ERROR

In all cases in which we determine error has occurred, "harmless-error review [is] required." Ferguson v. Commonwealth, 240 Va. ix, ix, 396 S.E.2d 675, 675 (1990). Errors are presumed harmful, and the Commonwealth bears the burden of proving the error was harmless. Chapman v. California, 386 U.S. 18, 24, 87 S. Ct. 824, 828, 17 L. Ed. 2d 705, 710-11 (1967). The improper restriction of cross-examination is an error of constitutional magnitude. Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S. Ct. 1431, 1438, 89 L. Ed. 2d 674, 686 (1986). "'[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt;' otherwise the conviction under review

must be set aside." Lilly v. Commonwealth, 258 Va. 548, 551, 523 S.E.2d 208, 209 (1999) (quoting Chapman, 386 U.S. at 24, 87 S. Ct. at 828, 17 L. Ed. 2d at 710-11).

"[O]ur analysis turns not on the evidence excluded . . . but on the evidence in the record, viz., [the witness'] testimony, which was not fully subject to cross-examination." Scott v. Commonwealth, 25 Va. App. 36, 42, 486 S.E.2d 120, 123 (1997). "'The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, [we] might nonetheless say that the error was harmless beyond a reasonable doubt.'" Maynard v. Commonwealth, 11 Va. App. 437, 448, 399 S.E.2d 635, 641 (1990) (en banc) (quoting Van Arsdall, 475 U.S. at 684, 106 S. Ct. at 1438, 89 L. Ed. 2d at 686). Important factors in this analysis are "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted and, of course, the overall strength of the prosecution's case." Van Arsdall, 475 U.S. at 684, 106 S. Ct. at 1438, 89 L. Ed. 2d at 686-87. "'[H]armless error analysis . . . [is not] simply a sufficiency of the evidence analysis.'" Williams v. Commonwealth, 32 Va. App. 395, 400, 528 S.E.2d 166, 169 (2000) (en banc) (quoting Hooker v. Commonwealth, 14 Va. App. 454, 457-58, 418 S.E.2d 343, 345 (1992)). "An error does not affect the verdict if we can determine, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same." Cairns v. Commonwealth, 40 Va. App. 271, 286, 579 S.E.2d 340, 347 (2003); see Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc).

Appellant was convicted of obtaining money from John Goots by false pretenses and giving material false testimony under oath before the magistrate. Code § 18.2-178 provides that "[i]f any person obtain, by any false pretense or token, from any person, with intent to defraud,

money[,] . . . he shall be deemed guilty of larceny thereof." Parker, 275 Va. at 154, 654 S.E.2d at 582. Conviction for this offense requires proof of the following four elements:

> "(1) an intent to defraud; (2) an actual fraud; (3) use of false pretenses for the purpose of perpetrating the fraud; and (4) accomplishment of the fraud by means of the false pretenses used for the purpose, that is, the false pretenses to some degree must have induced the owner to part with his property."

Id. (quoting Riegert v. Commonwealth, 218 Va. 511, 518, 237 S.E.2d 803, 807 (1977)).

The charge of depriving Goots of money by false pretenses hinged upon whether appellant acted with an intent to defraud when she prepared the two checks payable to her from Goots' escrow account and obtained Goots' signatures on those two checks, whether she made false statements to Goots regarding the transfer of funds into his escrow account to cover those checks, and, if so, whether those allegedly false statements induced Goots to sign the two checks.

The evidence tending to prove these things was wholly circumstantial, and the strongest evidence of appellant's guilt was provided by Goots himself. Nevertheless, the other evidence in the record both (1) established Goots' bias and (2) contradicted appellant's testimony and falsified documentary evidence to such an extent that we conclude the trial court's error in restricting appellant's cross-examination of Goots was harmless beyond a reasonable doubt. Appellant was the only witness impeached with a prior felony record, and other than Goots, none of the other witnesses was shown to have an interest in the outcome of the case. Further, the evidence admitted without objection established that appellant received more than $4,500 for which Goots was responsible and that she had not paid him back, providing appellant with ample evidence from which to argue Goots had reason to fabricate or slant his testimony.

Other evidence in the record showed appellant engaged in financial falsehoods, including fabricating two documents, which both preceded and followed Goots' involvement. Circumstantial evidence in the record strongly implicated appellant in the forgery of the

- 7 -

"Request for Verification of Deposit" form appellant faxed to real estate agent Lisa Atkinson, which occurred weeks before she went to work for Goots. Although the form purported to indicate an account in appellant's name existed at the Navy Federal Credit Union (NFCU) in April 2007 and contained a balance of over $400,000, appellant admitted she had no such account at that time and had not had such an account for at least fifteen years. Although she claimed her husband had an account there at the time and that she had power of attorney for him, the form listed her, not her husband, as the account holder. Further, the form was faxed from her office on April 18, 2007, but also bore a fax date of May 27, 2005, and time of 16:11, almost two years earlier. When police executed a warrant for appellant's residence in June 2007, they found a "Request for Verification of Deposit" form with that same 2005 fax date and time and the name of a different account holder. Both forms contained the signature of the same NFCU employee, but on the apparently falsified form which listed appellant as the accountholder, that NFCU employee's printed name was misspelled, her job title and various other information was incorrect or in an improper format, and that employee testified the form bearing appellant's name was not one that employee had prepared.

The evidence also established appellant told the seller's agents several lies after appellant took possession of the house and that appellant falsified an additional document related to the transfer of funds for the purchase. She told the seller's attorney the deeds had been recorded, when in fact they had not. She told the seller's attorney that the funds for the purchase had been wired to the seller when in fact they had not. She also provided the seller with a document purporting to confirm a wire transfer, when in fact no such transfer had occurred. She repeatedly avoided the attorney's phone calls and efforts to meet with her to complete the transfer of funds. She ultimately fled from Goots' office, where the seller's attorney and Goots were waiting for her, and she never returned for her personal property. Finally, when police, armed with a search

warrant, came to the residence she had moved into but never paid for, appellant ignored their knocking for fifteen minutes and hid when they entered the home.

In sum, although little evidence directly corroborates Goots' testimony, the record contains extensive evidence impeaching appellant's testimony and establishing she falsified documentary evidence on other critical points. Thus, the evidence as a whole, including independent evidence establishing Goots had reason to be biased against appellant, allows us to conclude beyond a reasonable doubt that the trial court's erroneous restriction of appellant's right to cross-examine Goots regarding bias was harmless as to appellant's conviction and sentence for obtaining money by false pretenses.

Similarly, we conclude this error was harmless as to appellant's conviction and sentence for giving material false testimony under oath in violation of Code § 18.2-434. Goots was not a witness to any of the events upon which this conviction was based. Goots' testimony was relevant to this conviction only because, since the two charges were tried together, appellant's credibility regarding the facts surrounding the false pretenses charge inferentially implicated her credibility as to the facts surrounding the charge for giving material false testimony. Because we conclude the error was harmless as to the false pretenses charge, we necessarily also hold it was harmless as to the charge for giving material false testimony.

III.

For these reasons, we hold that although the trial court's limitation on cross-examination was error, that error was harmless. Thus, we affirm the challenged convictions.

<u>Affirmed.</u>