COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Felton, Judges Kelsey and Huff
Argued at Chesapeake, Virginia


SAMUEL THOMAS PETTIT, JR.

                                         MEMORANDUM OPINION[*] BY
v.       Record No. 0155-11-1         CHIEF JUDGE WALTER S. FELTON, JR.
                                              NOVEMBER 29, 2011

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ACCOMACK COUNTY
Glen A. Tyler, Judge

Tucker L. Watson (Tucker L. Watson, P.C., on brief), for appellant.

Erin M. Kulpa, Assistant Attorney General (Kenneth T. Cuccinelli,
II, Attorney General, on brief), for appellee.


Samuel Thomas Pettit, Jr. ("appellant") was convicted by the Circuit Court of Accomack

County ("trial court") of obtaining money by false pretenses, in violation of Code § 18.2-178. On

appeal, appellant contends that the trial court erred in finding the evidence presented at trial was

sufficient to convict him. For the following reasons, we affirm the ruling of the trial court.

I. BACKGROUND

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth,

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App.

438, 443, 358 S.E.2d 415, 418 (1987)).

So viewed, the evidence at trial proved that in February 2010, Briceida Hernandez

("Hernandez") discussed with appellant the purchase of a trailer located on lot 62 in a trailer park

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

in Mappsville.[1]  Appellant told Hernandez that he owned the trailer and that he would sell it to her for $2,500.  He told her he wanted to sell it to her for $2,000, but that his girlfriend would not let him sell it for that price.  Based on appellant's representations, Hernandez gave appellant $1,500 as partial payment for the purchase of the trailer.  Hernandez met with appellant on February 27, 2010, two days after she gave him the first payment, and gave him the remaining $1,000 of the agreed sales price.  Appellant gave Hernandez a handwritten document, signed by him, stating:

> On this day of feb 27, 2010 I Samuel T. Pettit do sell this trailer to
> Briceida Hernandez for the amount of $2500.00, on Lot #62
> (Broadmore Trailer) Mappsville, VA 23407[2]

(Footnote added).

Hernandez was not able to move into the trailer because Willie Strand, who she learned was the actual owner of the trailer, told her that she had not paid for it.  Thereafter, Hernandez tried to no avail to get appellant to return the money she paid to him for the trailer.

Evelyn Madis, Hernandez's sister-in-law, told the trial court that she heard appellant tell Hernandez that he owned the trailer Hernandez sought to purchase.  Geovani Hernandez, Hernandez's son, who was with his mother when she gave appellant $1,500, confirmed that appellant stated that he owned the trailer.

The evidence proved that Strand owned the trailer in question and he was trying to sell it in February 2010.  Strand testified that appellant gave him $1,000 as partial payment towards the purchase of the trailer, but that he never transferred any ownership interest in the trailer to

---

[1] At various times during the trial, as well as on the bill of sale that appellant wrote, the lot that is at issue here is variously referred to as lot 62 and lot 24.  There is no dispute that the lot on which the trailer at issue was located was lot 24.

[2] The document also contained a stamp printed Notary Public certificate of Warren E. Northan under which there was a signature of "Warren Northan."  The trial court questioned the validity of the notarization due to the irregularity of the notary stamp.

appellant.  Appellant owed Strand a balance of $1,600 for the trailer and was supposed to pay the balance due over time, but never did.  Strand knew appellant was trying to sell the trailer to someone else, and stated he did not care what appellant did with the trailer so long as appellant paid him the balance he owed on the purchase price.  Strand told the trial court that he never gave appellant permission to act as his agent to sell the trailer.

Corporal Charles McPherson of the Accomack County Sheriff's Office interviewed appellant.  Appellant admitted that he tried to sell the trailer to Hernandez which he knew was owned by Strand and that he took $2,500 from Hernandez to sell her the trailer.  Harvey Pettit, Jr., appellant's brother, testified he moved into the trailer after appellant gave Strand the down payment for that trailer.  He said he was present when Hernandez spoke with appellant about purchasing that trailer, and denied that Hernandez asked appellant if he owned the trailer.

Appellant testified in his defense.  He told the trial court that he gave Strand a down payment to buy the trailer, but that because the trailer needed repairs he never lived in it.  He stated he told Strand he was going to sell the trailer and Strand told him to go ahead as long as appellant paid him in full.  Appellant testified he never told Hernandez that he owned the trailer and she never asked him if he was the owner.  Appellant admitted that when he took the $1,500 payment from Hernandez toward the purchase of the trailer, he intended to use it toward a down payment on an apartment for his girlfriend and their child, rather than pay it to Strand.  He also stated that from the second payment he received from Hernandez, he had intended to give $900 to Strand prior to Hernandez taking possession of the trailer, but that he was arrested for unrelated charges before he was able to do so.

The trial court found that appellant's testimony was not credible, and described portions of it as "incoherent" and "unadulterated double talk."  It found that appellant misrepresented his ownership of the trailer by word and deed, that he was not Strand's agent, and that he intended to

use the money for purposes other than acquiring ownership of the trailer from Strand at the time Hernandez gave him the money toward purchasing the trailer.

## II.  ANALYSIS

"'When reviewing the sufficiency of the evidence to support a conviction, the Court will affirm the judgment unless the judgment is plainly wrong or without evidence to support it.'" Smallwood v. Commonwealth, 278 Va. 625, 629, 688 S.E.2d 154, 156 (2009) (quoting Bolden v. Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008)).  "The issue upon appellate review is 'whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

Code § 18.2-178 provides, in pertinent part, that "[i]f any person obtain, by any false pretense or token, from any person, with intent to defraud, money, . . . he shall be deemed guilty of larceny thereof."  Conviction for this offense requires proof of the following four elements:

> "(1) [A]n intent to defraud; (2) an actual fraud; (3) use of false pretenses for the purpose of perpetrating the fraud; and (4) accomplishment of the fraud by means of the false pretenses used for the purpose, that is, the false pretenses to some degree must have induced the owner to part with his property."

Parker v. Commonwealth, 275 Va. 150, 154, 654 S.E.2d 580, 582 (2008) (quoting Riegert v. Commonwealth, 218 Va. 511, 518, 237 S.E.2d 803, 807 (1977) (citation and internal quotation marks omitted).

On appeal, appellant argues the Commonwealth failed to prove the first (intent to defraud) and third (use of false pretenses) statutory elements of the crime.  "Intent to defraud means that the defendant intends to 'deceive another person, and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter, or terminate a right, obligation or

power with reference to property.'" Bray v. Commonwealth, 9 Va. App. 417, 422, 388 S.E.2d 837, 839 (1990) (quoting Black's Law Dictionary 381 (5th ed. 1979)). "'Intent is a state of mind that may be proved by an accused's acts or by his statements and that may be shown by circumstantial evidence.'" Wilson v. Commonwealth, 249 Va. 95, 101, 452 S.E.2d 669, 673-74 (1995) (quoting Wright v. Commonwealth, 245 Va. 177, 193, 427 S.E.2d 379, 390 (1993)). "[I]t was for the [fact finder] to decide whether the defendant acted with criminal intent in the commission of the crimes." Griggs v. Commonwealth, 220 Va. 46, 51, 255 S.E.2d 475, 478 (1979).

The crime of false pretenses is "complete when the fraud intended is consummated by obtaining the property sought by means of the false representations and the offense is not purged by ultimate restoration or payment to the victim." Quidley v. Commonwealth, 221 Va. 963, 966, 275 S.E.2d 622, 625 (1981) (citations omitted).

The trial court found that Hernandez's testimony was sufficiently corroborated to prove that appellant told her he owned the trailer, a false pretense, and that she relied on that false representation at the time she paid him a total of $2,500 to purchase it. The trial court expressly rejected appellant's testimony as being incredible. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). Furthermore, "the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998).

The trial court further found that at the time Hernandez handed appellant the sums of money for the purchase of the trailer, appellant lacked the legal authority to transfer legal title of the trailer to Hernandez, even though he falsely represented to Hernandez that he had that

authority and ability both by word and by deed. Moreover, appellant did not use the money given to him by Hernandez to obtain the title from Strand, the actual owner of the trailer, but instead used those funds as a down payment on an apartment in Maryland. From the evidence presented, the trial court concluded that appellant intentionally and fraudulently misled Hernandez to believe that the money she gave him was to purchase a trailer he owned, even giving her a sham bill of sale.

Appellant's reliance on Grites v. Commonwealth, 9 Va. App. 51, 384 S.E.2d 328 (1989), is misplaced. In Grites, this Court held that the fact that Grites misrepresented himself as the true owner of a dismantled log cabin, for which he had received payment from the purchaser, *standing alone*, was insufficient to prove his intent to defraud. Here, not only did appellant intentionally misrepresent to Hernandez that he owned the trailer, but, after receiving payment of the purchase price in two installments from her, he presented her with a sham bill of sale. He used the money he had received from Hernandez, not to acquire ownership of the trailer from Strand, but for other purposes, including the down payment deposit for an apartment in another state. No reasonable inference can be gleaned from the evidence presented to the trial court that appellant intended to use the money he obtained from Hernandez to transfer legal ownership of the trailer, which he falsely represented he owned, to her.

From the record on appeal, we conclude that the trial court did not err in finding the evidence was sufficient to convict appellant of obtaining Hernandez's money by false pretenses.

### III. CONCLUSION

For the foregoing reasons, we affirm the ruling of the trial court.

Affirmed.