COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Petty and Decker
Argued at Richmond, Virginia

UNPUBLISHED

WILLIAM ROLAND MASSEY, III

                                         MEMORANDUM OPINION[*] BY
v.        Record No. 0359-14-2            JUDGE MARLA GRAFF DECKER
                                           MARCH 24, 2015

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF DINWIDDIE COUNTY
Paul W. Cella, Judge

William T. Linka (Richmond Criminal Law, on brief), for appellant.

Susan Mozley Harris, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

William Roland Massey, III, appeals his conviction for obtaining money or property by false

pretenses in violation of Code § 18.2-178.  On appeal, he raises four claims in the context of two

assignments of error.  He contends that the evidence failed to prove that he used a false pretense or

had an intent to defraud at or before the time that the false representations were made.  He further

asserts that the evidence did not establish that he was a principal of the corporation with which the

victim entered into the contract or that he received any money or property belonging to the victim.

We hold that to the extent the appellant preserved these claims for appeal, the evidence was

sufficient to support his conviction.  Therefore, we affirm the conviction.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND[1]

The transaction for which the appellant was convicted involved timber rights to land in Dinwiddie County owned by Janeshwar Upadhyay and his wife. The evidence established that in the years leading up to the instant offense, the appellant repeatedly represented that he was in the business of buying and selling timber rights. He did this first through a North Carolina-based corporation of which the contracts indicated he was a "[m]anaging [m]ember." He then continued through a Virginia-based corporation purportedly managed by an individual named R.W. Hasty, who may have been the appellant's uncle.

The appellant engaged in similar courses of behavior with two different families in North Carolina in 2009, the Bakers and the Hendersons. In each case, he executed a written contract to purchase the family's timber rights and promised to make payment of a particular amount. The timber was harvested, but the appellant failed to make payment as promised. In the case of the Bakers, the appellant paid about $15,000 of the $50,000 that he had estimated that they would receive. The appellant failed to cooperate with arbitration, as required in the contract he had provided, and the Bakers obtained a judgment for an additional $15,000 in a civil suit on the contract. In the case of the Hendersons, after their timber had been cut, they received "[a] lot of false promises" from the appellant, who set up and then canceled numerous meetings in order to make payment of the $15,000 contract price. The appellant eventually offered the Hendersons partial payment. They rejected the offer and still had not been paid several years later.

From 2010 to 2011, the appellant engaged in similar transactions in Virginia under the name of Mossy Oak Timber, LLC. The appellant entered into a verbal agreement with Donnie Fitzgerald to purchase timber rights to his property in Dinwiddie County for $12,000. An amount of $5,000

---

[1] On appellate review of a criminal conviction, this Court views the evidence and all reasonable inferences flowing from the evidence in the light most favorable to the Commonwealth. See, e.g., Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003).

was due up front, and the balance was to be paid after the timber had been cut. The contract memorializing this agreement, dated December 29, 2010, listed Mossy Oak as the buyer and provided that the seller would receive full payment before any timbering occurred. The appellant signed the contract as "buyer" for Mossy Oak and included a check for $5,000 rather than the full contract price of $12,000. The check was drawn on the account of Union Lumber and was signed by the appellant. A few weeks later, Fitzgerald saw that the timber had been cut, so he telephoned the appellant. The appellant acknowledged that he owed Fitzgerald $7,000 and claimed the check was "in the mail." In subsequent phone calls, the appellant continued to make excuses and then stopped answering his phone. In early April 2011, Fitzgerald telephoned Mossy Oak, and "[t]hey said that [the appellant] . . . was not an agent or affiliated with them[] [and] that their attorneys would be looking into it."

Fitzgerald contacted the Dinwiddie Sheriff's Department. The appellant then called him to arrange payment. After checks drawn on the Union Lumber account were returned for insufficient funds, Fitzgerald again called the Sheriff's Department. A few days later, the appellant met Fitzgerald in person, gave him $6,200 in cash and had him sign a release. Fitzgerald dealt only with the appellant throughout the entire transaction.

In December 2010, around the same time that the appellant entered into the agreement with Fitzgerald, he contacted Upadhyay and expressed an interest in purchasing the timber rights to two different parcels of land in Dinwiddie County owned by Upadhyay and his wife, a smaller tract on Route 40 (the Route 40 parcel) and a larger tract on Route 624 (the Route 624 parcel). On January 20, 2011, the appellant and Upadhyay met and agreed to a sale of the timber rights to the Route 40 parcel for $36,000. The parties executed a written contract. After the timber on the Route 40 parcel was harvested, the appellant paid the agreed amount of $36,000. However, the appellant "had not performed exactly like he had promised" in that the "money . . . was paid to [Upadhyay] a little

more slowly than [Upadhyay] would have liked" and the appellant failed to fulfill a contract provision requiring him "to clean and plant and fertilize and spray."

Later, Upadhyay orally agreed to sell the appellant the timber on the Route 624 parcel for $60,000. The appellant promised to deliver "better performance this time" than in the previous transaction. This time, however, the appellant failed to make any payments in a timely fashion, and Upadhyay received only $15,000 of the $60,000 the appellant had promised to pay him.

In the course of the parties' dealings regarding the second parcel, the appellant presented Upadhyay with a contract very similar to the first one, which Upadhyay signed on February 23, 2011. This contract, like the first one, listed Mossy Oak Timber, LLC, as the buyer, and it was signed on behalf of the corporation by R.W. Hasty, "Managing Member." Upadhyay also indicated that as to both contracts, he negotiated and dealt only with the appellant. The appellant expressly represented to Upadhyay that "this [was] his contract, he [was] responsible for it, he [would] pay the money[,] and [Upadhyay] would be dealing with him." Upon questioning from Upadhyay about Hasty's identity, the appellant represented that he and Hasty were "partners" and "ha[d] been working together for a long time."

Following execution of the first contract for $36,000, the appellant sold the timber rights to Richard Short, the owner of a timber company called Real Tree, for the lesser sum of $30,000. Following execution of the second contract for $60,000, the appellant almost immediately sold the timber rights to Short for the lesser sum of $50,000. Although the appellant paid Upadhyay in full under the first contract, he paid none of the money from his second transaction with Short to Upadhyay. The appellant later admitted to Short that he had not paid Upadhyay in full and claimed he owed him $15,000. Short had already paid the appellant in full, but because Short wanted to see the contract satisfied so that he could harvest the timber, he provided a check for an additional $15,000, payable to Upadhyay. This was the only money Upadhyay ever received for the timber

taken from the Route 624 parcel. Upadhyay tried repeatedly to obtain additional payment from the appellant, Hasty, and Mossy Oak Timber, but he was unsuccessful in doing so.

Following a bench trial, the appellant was convicted of larceny by false pretenses based on his failure to pay Upadhyay in full under the timber rights contract for the Route 624 parcel. The court sentenced the appellant to serve fifteen years in prison with thirteen years suspended and ordered him to make restitution in the amount of $38,975.

## II. ANALYSIS

The appellant challenges the sufficiency of the evidence to prove he committed larceny by false pretenses in violation of Code § 18.2-178. "'[U]pon appellate review, the evidence and all reasonable inferences flowing therefrom must be viewed in the light most favorable to the prevailing party in the trial court,'" in this case the Commonwealth. Parker v. Commonwealth, 275 Va. 150, 155, 654 S.E.2d 580, 583 (2008) (quoting Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003)). "[T]his court must 'discard the evidence of the accused in conflict with that of the Commonwealth . . . .'" Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (quoting Wright v. Commonwealth, 196 Va. 132, 137, 82 S.E.2d 603, 606 (1954)). If "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,' . . . we may not substitute our judgment, even if our conclusions of fact [would] differ from the conclusions reached by the [fact finder] at trial." Austin v. Commonwealth, 60 Va. App. 60, 65-66, 723 S.E.2d 633, 636 (2012) (quoting Commonwealth v. McNeal, 282 Va. 16, 20, 710 S.E.2d 733, 735 (2011)) (internal quotation marks omitted).

Code § 18.2-178 provides in relevant part that "[i]f any person obtain, by any false pretense . . . , from any person, with intent to defraud, money . . . or other property that may be the subject of larceny, he shall be deemed guilty of larceny thereof." To sustain a conviction for larceny by false pretenses,

the Commonwealth must prove: "(1) an intent to defraud; (2) an actual fraud; (3) use of false pretenses for the purpose of perpetrating the fraud; and (4) accomplishment of the fraud by means of the false pretenses used for the purpose, that is, the false pretenses to some degree must have induced the owner to part with his property."

Riegert v. Commonwealth, 218 Va. 511, 518, 237 S.E.2d 803, 807 (1977) (quoting Bourgeois v. Commonwealth, 217 Va. 268, 272, 227 S.E.2d 714, 717 (1976)); see Parker, 275 Va. at 154, 654 S.E.2d at 582.

The appellant asserts that the evidence failed to show that he had an intent to defraud that co-existed with any false representations or pretenses. Additionally, he contends that the evidence did not establish that he was a principal of the corporation that acquired the victim's timber rights or that he received any money or property belonging to the victim. Because we dispose of the false pretense element on procedural grounds, we consider it first and then turn to the sufficiency of the evidence to prove the remaining elements in dispute on appeal.

### A. False Pretenses

On appeal, the appellant vaguely suggests that the evidence is insufficient to prove the necessary false representation. In the course of specifically challenging the evidence of intent to defraud, he references merely what he perceives as a lack of clarity regarding "the nature of the specific representations that [the Commonwealth] claims [were] the false pretenses" that induced Upadhyay to enter into the contract. We assume without deciding that this language is facially adequate to challenge the sufficiency of the evidence to prove the false pretense element on appeal. Nevertheless, we conclude that Rule 5A:18 bars us from considering the argument because the appellant failed to present it to the trial court.

Under Virginia's definition of the crime proscribed by Code § 18.2-178,

"the false pretense must be a representation as to an *existing* fact or *past* event. False representations amounting to mere promises or statements of intention have reference to *future* events and are not criminal within the statute, even though they induce the party

> defrauded to part with his property. But if false representations are made, some of which refer to existing facts or past events, while others refer solely to future events, a conviction may be had if it is shown that any of the representations as to existing facts induced the complaining witness to part with his property."

Parker, 275 Va. at 154, 654 S.E.2d at 582 (emphases added) (quoting Hubbard v. Commonwealth, 201 Va. 61, 66, 109 S.E.2d 100, 104 (1959)).

Here, the appellant stated generally to the trial court in his first motion to strike that the crime of larceny by false pretenses requires "a material statement that affects either a *present* issue or a *past* issue," language that roughly parallels the legal requirement of a misrepresentation as to an *existing* fact or *past* event rather than a future one. (Emphases added). The appellant then contended that the Commonwealth failed to "demonstrate[] . . . any *past* issue between these people." (Emphasis added). In his challenge to the Commonwealth's proof, he did not argue that the evidence failed to prove a material misstatement involving an *existing* fact. He argued only that the Commonwealth "doesn't have a case" until it "can get up here and say that at the particular moment that the contract was entered into[,] . . . the intent to defraud existed." The appellant elaborated that he lacked intent to defraud at that time because the evidence failed to prove he "had any idea at that point that Mossy Oak . . . didn't intend to pay [Upadhyay]."

The prosecutor, in reply, addressed all four elements of the offense. Relevant to the false pretenses element, the prosecutor asserted that the appellant made a false representation of an *existing* fact—his intent to pay in compliance with the contract. The appellant responded to a number of the Commonwealth's statements, but at no time did he dispute the Commonwealth's argument that he made a false representation of an existing fact or challenge the nature of that representation.

When the trial court denied the appellant's first motion to strike, he rested without presenting any evidence. He then renewed his motion to strike, incorporating "all of the previous

grounds" he had argued. He focused his second motion to strike, made in combination with his closing argument, on the lack of evidence to prove he acted with fraudulent intent at the time he entered into the contract; that he profited from it; or that he was liable in any other way for the corporation's failure to pay.[2]

Rule 5A:18 provides, in pertinent part, that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Interpreting this rule, this Court has held that "[a] general argument or an abstract reference to the law is not sufficient to preserve an issue." Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (*en banc*), aff'd by unpub'd order, No. 040019 (Va. Oct. 15, 2004). In addition, "[m]aking one specific argument on an issue does not preserve a separate legal point on the same issue for review." Id.; see Copeland v. Commonwealth, 42 Va. App. 424, 441, 592 S.E.2d 391, 399 (2004) (holding that an objection to the sufficiency of the evidence to prove whether the defendant had the intent to distribute cocaine on school property was not preserved by the argument that no evidence proved that his actions occurred within a thousand feet of a school zone). The purpose of the rule in requiring an adequately articulated objection is to allow both the trial court and the opposing party "the opportunity to intelligently address, examine, and resolve issues in the trial court" in order to avoid unnecessary appeals and retrials. Correll v. Commonwealth, 42 Va. App. 311, 324, 591 S.E.2d 712, 719 (2004).

---

[2] The appellant also cited to the trial court three Virginia appellate decisions. See Orr v. Commonwealth, 229 Va. 298, 301-02, 329 S.E.2d 30, 32 (1985) (intent to defraud); Riegert, 218 Va. at 519-20, 237 S.E.2d at 808-09 (intent to defraud); Wynne v. Commonwealth, 18 Va. App. 459, 460, 445 S.E.2d 160, 161 (1994) (*en banc*) (causation between the defendant's fraud and his obtaining the victim's money). None of these cases addresses whether the alleged misrepresentations involved existing or past facts as required to prove a false pretense.

The appellant never argued to the trial court either that the evidence failed to prove a misrepresentation as to an existing fact or that the Commonwealth's theory about what constituted that misrepresentation of existing fact was erroneous.[3] If he had made such an argument below, the Commonwealth could have sought to clarify its evidence, and the trial court would have had an opportunity to make any additional relevant findings and conclusions on that issue. The appellant did not articulate this claim below, however, and as a result, the Commonwealth and the trial court were deprived of these opportunities. Further, the appellant does not assert that the ends of justice exception to Rule 5A:18 applies to permit the Court to consider the false pretenses issue, and we do not consider that very limited exception *sua sponte*. See Edwards, 41 Va. App. at 761, 589 S.E.2d at 448. In addition, our review of the record does not reveal any reason to invoke the "good cause" exception to Rule 5A:18. See Andrews v. Commonwealth, 37 Va. App. 479, 494, 559 S.E.2d 401, 409 (2002) (holding that the "good cause" exception did not apply because the appellant had the opportunity to bring his claim to the attention of the trial court but failed to do so). Therefore, we hold that Rule 5A:18 bars our consideration of this specific issue.

### B. Intent to Defraud

A conviction for violating Code § 18.2-178 requires proof that the accused's intent was to defraud and that the fraudulent intent "'existed at the time the false pretenses were made, by which

---

[3] The appellant also fails to address this issue adequately on brief. His three-and-one-half pages of argument specifically challenge only three different findings: (1) that he was the principal of the corporation, not just an employee; (2) that he intended to defraud the landowner either at the time or before the false representations were made; and (3) that he received money or property as a result. In discussing the intent element, he alleges only vaguely that "[t]he Commonwealth's evidence is lacking as to . . . the nature of the specific representations that it claims were the false pretenses." He cites no law on this point beyond general case law requiring proof of a false representation of an existing fact or past event, and he does not discuss the evidence that the Commonwealth relied on in the trial court as proving a false representation of an existing fact. Rule 5A:20(e) bars us from addressing issues unsupported by adequate argument and authority. Klein v. Klein, 49 Va. App. 478, 482, 642 S.E.2d 313, 315 (2007); see Epps v. Commonwealth, 47 Va. App. 687, 718, 626 S.E.2d 912, 926 (2006) (*en banc*), aff'd, 273 Va. 410, 641 S.E.2d 77 (2007).

the property was obtained.'"  Orr v. Commonwealth, 229 Va. 298, 301, 329 S.E.2d 30, 32 (1985) (quoting Riegert, 218 Va. at 518, 237 S.E.2d at 808); cf. Austin, 60 Va. App. at 65 n.1, 723 S.E.2d at 635 n.1 (considering the sufficiency of the evidence to prove fraudulent intent as a separate issue from determining the existence of a false pretense or representation, which the defendant failed properly to present for appeal under Rule 5A:12(c)).  The appellant asserts that the evidence failed to show that he had the intent to defraud when he and Upadhyay entered into the timber contract for the larger Route 624 parcel.

"[I]ntent is 'a secret operation of the mind.'"  Riegert, 218 Va. at 519, 237 S.E.2d at 808 (quoting Trogdon v. Commonwealth, 72 Va. (31 Gratt.) 862, 872 (1878)).  It "'may, and most often must, be proven by circumstantial evidence.'"  Austin, 60 Va. App. at 66, 723 S.E.2d at 636 (quoting Fleming v. Commonwealth, 13 Va. App. 349, 353, 412 S.E.2d 180, 183 (1991)).  In attempting to establish "intent or knowledge, [using circumstantial evidence] is practically the *only* method of proof."  Parks, 221 Va. at 498, 270 S.E.2d at 759.  Therefore, "in order to determine whether the intent to defraud existed at the time the act was committed," circumstantial evidence in the form of "the conduct and representations of the accused must be examined."  Riegert, 218 Va. at 519, 237 S.E.2d at 808.  The statements and conduct of an accused after the events that constitute the charged crime may also be relevant circumstantial evidence of his earlier intent.  See Canipe v. Commonwealth, 25 Va. App. 629, 645, 491 S.E.2d 747, 754 (1997).

In reviewing such evidence, it is important to recognize that circumstantial evidence is as competent to prove guilt as direct evidence, provided that the evidence as a whole "is sufficiently convincing to exclude every reasonable hypothesis except that of guilt."  Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983).  Whether a hypothesis of innocence is reasonable is a question of fact that will be set aside only if plainly wrong or without evidence to support it.  See Hudson, 265 Va. at 513-14, 578 S.E.2d at 785-86.

Where a material element of the crime is the fraudulent intent of the accused, the Commonwealth is "allowed broad scope in introducing evidence with even the slightest tendency to establish or negate such intent." Bourgeois, 217 Va. at 273, 227 S.E.2d at 718. Factors considered probative of intent to defraud under Code § 18.2-178 "include evasive conduct and a general lack of communication with the victims about any problems or other reasons asserted for non-payment or non-performance." Austin, 60 Va. App. at 67, 723 S.E.2d at 636 (citation omitted). Also, evidence that the accused "'perpetrated more than one fraud [at] about the same time is relevant to show his fraudulent intent.'" Id. (alteration in original) (quoting Mughrabi v. Commonwealth, 38 Va. App. 538, 546, 567 S.E.2d 542, 546 (2002)); see also Bourgeois, 217 Va. at 273, 227 S.E.2d at 718.

The evidence here, viewed under the appropriate standard, supports a finding that the appellant acted with the intent to defraud when he entered into the timber contract with Upadhyay for the Route 624 parcel on February 23, 2011. As the trial court expressly found, the evidence showed that, prior to the appellant's entering into that contract, the appellant had a "pattern of . . . entering into transactions" for timber rights as an agent or a principal with "people not getting paid." On two timber contracts that the appellant entered into in 2009 in North Carolina involving a different company, the sellers received either none or less than half of the amount that the appellant had promised under their respective agreements.

It was with this history that the appellant approached Upadhyay about purchasing the timber rights to his smaller property on Route 40 and obtained the signatures of both Upadhyay and his wife on the contract. He agreed to pay them $36,000 for those rights and then sold the rights to Short of Real Timber for the lower price of $30,000. Although the appellant paid Upadhyay and his wife in full and in a reasonably prompt fashion under that first contract, he did not fulfill all the contractual conditions. Further, his behavior both during and after the execution of the second

- 11 -

contract, for the larger Route 624 parcel, supported a finding that he never intended to pay Upadhyay the full amount due under that second contract.

The parties agreed under the second contract to a price of $60,000, but the contract that the appellant presented for Upadhyay's signature listed the price as a mere $1,000. When Upadhyay questioned that figure, the appellant tried to convince Upadhyay that using the lower figure would reduce Upadhyay's tax liability. When Upadhyay insisted that the $60,000 figure be written into the contract, the appellant complied. However, rather than using a notation that reflected his own initials, "RW/WRM III," as he had done in executing the first contract, he initialed the change with the more generic, "M/Oak." Further, in adding a provision modifying the time for payment to March 11, 2011, from the typed provision stating that payment had been made in full, he failed to initial this added language at all.

In addition, the evidence supports a finding that immediately after adding these terms, the appellant substituted a copy of the original typed first page of the contract containing the $1,000 figure in place of the page on which he had written and initialed the $60,000 figure. He also substituted a copy of the original second page of the contract, the page on which he and Upadhyay had added the handwritten condition requiring payment by March 11, 2011, rather than at the time of executing the contract.

The appellant affected a similar substitution with the signature page, which further supports a finding that he acted with the intent to defraud at the time the parties executed the contract. Upadhyay signed the second contract but pointed out to the appellant that his wife had not done so. The appellant told him that his wife's signature was not necessary. However, as observed by the trial court, the evidence supports the inference that immediately after the signing, the appellant substituted the signature page from the first contract, fully executed by both Upadhyay and his wife, in place of the partially executed signature page in the second contract.

The appellant then showed this falsified contract—which comprised the two substitute pages from the original unnegotiated second contract and the signature page from the first contract—to Short for the purpose of confirming his authority to assign the timber rights. He also falsely told Short that the contract price had been paid. This falsified contract, along with the appellant's statements to Upadhyay about the contract price of $1,000 versus $60,000 and the assurance that the signature of Upadhyay's wife was unnecessary, support the trial court's implicit finding that the appellant acted with the intent to defraud when he and Upadhyay negotiated and signed the second contract.

Finally, the appellant immediately sold the timber rights to Short for $50,000, substantially less than the $60,000 that he had agreed would be paid to Upadhyay. He paid none of that money to Upadhyay, despite the fact that he had agreed to pay the $60,000 in full by March 11, 2011. This agreed date for payment was less than three weeks after the date on which the appellant and Upadhyay had entered into the contract. On some occasions during the period of the appellant's nonpayment, someone would answer Upadhyay's calls to the appellant and claim that he had the wrong number. At other times, the appellant would answer the phone and agree to meet Upadhyay to make payment but would then change the date or simply fail to appear. See Austin, 60 Va. App. at 67, 723 S.E.2d at 636-37 (considering similar post-fraud behavior as evidence of intent to defraud at an earlier time). Upadhyay received no payments on the contract until he started calling the appellant several times a week and a different landowner contacted the Sheriff's Department about the appellant's failure to pay him pursuant to a similar timber contract. See id. at 67, 723 S.E.2d at 636. The only payment that Upadhyay received on the second contract came from Short, the owner of Real Timber, when he learned that the appellant had not paid Upadhyay pursuant to the timber assignment contract.

The evidence, viewed in its entirety, fully supports the trial court's finding that when the appellant entered into the second timber contract with Upadhyay, the one for the more lucrative Route 624 parcel, he never intended to pay the agreed-upon contract price of $60,000.[4] The trial court, as the finder of fact, was entitled to reject the appellant's hypothesis that he did not act with such an intent.

### C. Agency Status and Receipt of Money or Property

A conviction for larceny by false pretenses requires proof that "both title to and possession of property . . . [has] pass[ed] from the victim to the defendant (or his nominee)." Baker v. Commonwealth, 225 Va. 192, 194, 300 S.E.2d 788, 789 (1983) (quoting Cunningham v. Commonwealth, 219 Va. 399, 402, 247 S.E.2d 683, 685 (1978)). "The gravamen of the offense . . . is the obtainment of ownership of property . . . ." Quidley v. Commonwealth, 221 Va. 963, 966, 275 S.E.2d 622, 624 (1981). The appellant contends that the evidence fails to prove that he gained any interest in the property or received any money or right to harvest timber in part because it does not prove he was "any more than an agent of Mossy Oak[]."

We hold that the circumstantial evidence on this element, viewed under the proper legal standard, is sufficient to support the finding that all reasonable hypotheses of the appellant's innocence were excluded. See Hudson, 265 Va. at 513-14, 578 S.E.2d at 785-86; Coleman, 226 Va. at 53, 307 S.E.2d at 876. The appellant told Upadhyay that the contract they entered into was "[the appellant's] contract, that he [was] responsible for it." The appellant also said that he and Hasty

---

[4] The appellant's case is distinguishable from Grites v. Commonwealth, 9 Va. App. 51, 53, 384 S.E.2d 328, 329 (1989), in which the Court held that the evidence was insufficient to prove an intent to defraud under Code § 18.2-178. Grites involved a single transaction, and although some of the circumstances surrounding it were suspicious, the Court held that at least one hypothesis of innocence flowed from the documentary evidence in that case. Id. at 57-59, 384 S.E.2d at 332-33. In the appellant's case, by contrast, the documentary evidence supports a finding that he acted with an intent to defraud, and he engaged in other similar transactions—both previously and contemporaneously—in which he failed to pay others in full for their timber rights.

were "partners" and "ha[d] been working together for a long time." The appellant further indicated that "it was the same whether it was Mossy Oak or . . . William Massey[,] it [was] the same person." Short's testimony supports these representations. Short testified that in contrast to previous dealings with Mossy Oak, in which he had interacted with Hasty, Short dealt only with the appellant regarding the timber rights to Upadhyay's property. The trial court found Short's testimony on this point particularly significant. Finally, when Upadhyay telephoned Hasty in an effort to reach the appellant to obtain payment, Hasty reported that the appellant was his nephew and that they had been working together for "a long time" but that the appellant was "not doing what he [was] supposed to be doing." Additional evidence showed that the appellant had engaged in at least three similar transactions with other landowners in which the appellant alone dealt with the landowner in purchasing his timber rights and the landowner received no payment or only partial payment.

The trial court took specific note of the Commonwealth's request to the court to infer from the appellant's behavior that he was "the one who [got] the benefit" and was "not going around running a charity operation." It then specifically found that "on or about the time that the contract with [Upadhyay] was entered into[,] the timber rights were immediately assigned[,] . . . payment was immediately made [to the appellant,] and [Upadhyay] was not paid." The trial court further found that the appellant had "a pattern" of engaging in similar behavior in which other sellers did "not get[] paid." These findings, coupled with Hasty's statement that the appellant was "not doing what he [was] supposed to be doing," support the conclusion that the appellant received, or at least shared in, the victim's timber rights and the payment that Short made to the appellant to purchase those rights.

The only case cited by the appellant in his argument on this element, Shropshire v. Commonwealth, 40 Va. App. 34, 577 S.E.2d 521 (2003), does not support a different result. Shropshire involved a situation in which a defendant took possession of an automobile for which he

- 15 -

never paid and the car was ultimately returned to the dealer. Id. at 37-38, 577 S.E.2d at 522-23. The Court held that larceny by false pretenses was not proved because, although the defendant acquired possession of the vehicle through his fraudulent representations, neither title to nor any lesser ownership interest in the vehicle ever passed to the defendant. Id. at 39-41, 577 S.E.2d at 523-24. The Court noted that "[d]epending on the facts of a case," a temporary certificate of title, promissory note, conditional sale contract, or other document could "evidence some type of ownership transfer, either equitable or legal," sufficient to support a conviction of larceny by false pretenses. Id. at 39-40, 577 S.E.2d at 524. However, it held that no such document was shown to exist in that case. Id. at 37, 39-41, 577 S.E.2d at 522-24.

In the appellant's case, in contrast to Shropshire, the evidence supports a finding that the appellant obtained sufficient documentation of a transfer of title to Upadhyay's timber rights to also obtain a contract with Short. See Lewis v. Commonwealth, 28 Va. App. 164, 168, 503 S.E.2d 222, 224 (1998) (recognizing that "'the doctrine that one must obtain title and possession in order to be guilty of the crime of false pretenses cannot mean an absolute title because any title obtained by fraud is voidable and the requirement would make it impossible for the crime to be consummated'" (quoting Whitmore v. State, 298 N.W. 194, 195 (Wis. 1941))). The evidence further supports a finding that, as a result of that contract, the appellant received some or all of the $50,000 purchase price paid by Short and Short received the timber. Thus, the evidence proved a transfer of title and possession sufficient to support the appellant's conviction under Code § 18.2-178.

### III. CONCLUSION

We hold that the appellant failed to preserve for appeal the claim that the behavior for which he was convicted did not establish the requisite false representation or pretense. We further hold that the evidence was sufficient to prove that the appellant acted with the requisite intent to defraud at or before the time that the false representations were made and received money or property

belonging to the victim within the meaning of Code § 18.2-178.  Therefore, we affirm the

conviction.

<u>Affirmed.</u>