COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judges Elder and Humphreys
Argued at Richmond, Virginia


SANDRA LEE AUSTIN

v.       Record No. 1107-11-2

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE ROBERT J. HUMPHREYS
APRIL 10, 2012


FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
Edward L. Hogshire, Judge

James Hingeley, Public Defender (Elizabeth P. Murtagh, Deputy
Public Defender, on brief), for appellant.

Aaron J. Campbell, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Sandra Lee Austin ("Austin") appeals her conviction after a bench trial in the Circuit

Court of the City of Charlottesville ("trial court") of two counts of obtaining money or property

by false pretense in violation of Code § 18.2-178.  On appeal, Austin argues that the trial court

committed reversible error when it denied her motion to strike the two charges because the

Commonwealth did not meet its burden of proving beyond a reasonable doubt that she intended

to defraud the two complainants at the time she obtained property from them.  For the following

reasons, we affirm the judgment of the trial court.

I.  Background

This Court reviews the evidence in the light most favorable to the prevailing party in the

trial court.  Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003).  We must

"discard the evidence of the accused in conflict with that of the Commonwealth, and regard as

true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn

therefrom." Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980). In this light, the evidence is as follows.

On February 20, 2010, Austin entered The Eternal Attic consignment store to purchase some rugs. Jane DeButts, co-owner of the store, explained their "approval policy" to Austin. Under the approval policy, a customer could leave a check for the price of the merchandise and take the items home to try them out. If the customer did not return the merchandise to the store or contact the store after twenty-four hours, the store would deposit the check. Austin decided to take three rugs home on approval. She wrote a check to The Eternal Attic for the total purchase price of the three rugs, which was $676.20. Austin gave the check to a salesperson and took the rugs from the store.

At the end of the day, Phillip Eastham, another co-owner of the store, took Austin's check to the bank to see if Austin had sufficient funds in her account to cover the check. The bank assured him that Austin had sufficient funds in her account to cover the amount of the check. After the twenty-four-hour approval period expired, and with no word from Austin, the store deposited her check. On February 26, 2010, the bank notified The Eternal Attic that a stop payment had been issued on Austin's check.

Eastham left repeated messages for Austin, and DeButts made at least one phone call to Austin, but Austin did not return any of the phone calls. The store never received the rugs back, or any explanation from Austin as to why she did not return or pay for the rugs. DeButts filed a felony complaint on Austin. Austin was arrested and was released on bond on March 15, 2010.

On March 31, 2010, Austin went to the Spectacle Shop in downtown Charlottesville where she ordered a pair of glasses and an extra set of lenses for her existing pair of glasses. She indicated that she was using her large tax refund for this purchase. On April 12, 2010, she

returned to pick up the glasses and she gave a check to the Spectacle Shop for the purchase price of $890. She left the store excited about her new glasses that went with her "new look."

The Spectacle Shop deposited Austin's check on April 20, 2010. The check was returned on April 22, 2010 because a stop payment order had been issued on the check. David Bright, owner of the Spectacle Shop, attempted to contact Austin twice and left messages on her voicemail about the situation. Austin never returned his phone calls and never returned the glasses or lenses.

Detective Edward Prachar investigated the situation between Austin and the Spectacle Shop. Prachar contacted Austin by phone on June 9, 2010, and told her what he was investigating. She told him that "God had told her to stop payment on the check [to the Spectacle Shop]." She agreed that she had stopped the payment on the check and said she wasn't satisfied with the work done on the eyeglasses. She said she did not feel like she had to return or exchange the glasses at the time.

The grand jury indicted Austin for obtaining by false pretense or token, three rugs belonging to The Eternal Attic and valued at $200 or more, and later indicted her for obtaining by false pretense or token $200 or more in property from the Spectacle Shop, both in violation of Code § 18.2-178. The trial court convicted Austin on both charges.

## II. Analysis

On appeal, Austin challenges the sufficiency of the evidence to support her convictions. She contends that the Commonwealth did not meet its burden of proving beyond a reasonable doubt that she intended to defraud the two complainants at the time she obtained property from them.[1] When the sufficiency of the evidence is challenged on appeal, we must "'examine the

---

[1] Austin also argues on brief that there was no evidence at trial to establish a false pretense. This argument regarding the sufficiency of the evidence to establish that Austin made a false representation is outside the scope of Austin's single assignment of error contending that

evidence that supports the conviction and allow the conviction to stand unless it is plainly wrong or without evidence to support it.'" Commonwealth v. McNeal, 282 Va. 16, 20, 710 S.E.2d 733, 735 (2011) (quoting Vincent v. Commonwealth, 276 Va. 648, 652, 668 S.E.2d 137, 139-40 (2008)). This Court reviews the evidence in the light most favorable to the Commonwealth, as the prevailing party below, and determines whether "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). If there is evidence to support the conviction, we may not substitute our judgment, even if our conclusions of fact differ from the conclusions reached by the fact-finder at trial. Id.

Code § 18.2-178(A) provides that, "[i]f any person obtain, by any false pretense or token, from any person, with intent to defraud, money, a gift certificate or other property that may be the subject of larceny, he shall be deemed guilty of larceny thereof . . . ." To sustain a conviction of larceny by false pretense, the Commonwealth must prove: "(1) an intent to defraud; (2) an actual fraud; (3) use of false pretenses for the purpose of perpetrating the fraud; and (4) accomplishment of the fraud by means of the false pretenses used for the purpose . . . ." Bourgeois v. Commonwealth, 217 Va. 268, 272, 227 S.E.2d 714, 717 (1976). There must be

---

the evidence was insufficient to establish that Austin intended to defraud the merchants at the time she obtained the property, and she did not address this point under a separate assignment of error.

"Under a heading entitled 'Assignments of Error,' the petition [for appeal] shall list, clearly and concisely and without extraneous argument, the specific errors in the rulings below upon which the party intends to rely." Rule 5A:12(c)(1). "Only assignments of error assigned in the petition for appeal will be noticed by this Court." Rule 5A:12(c)(1)(i). The purpose of the assignments of error presented to this Court is to "'point out the errors with reasonable certainty in order to direct [the] court and opposing counsel to the points on which appellant intends to ask a reversal of the judgment, and to limit discussion to these points.'" Carroll v. Commonwealth, 280 Va. 641, 649, 701 S.E.2d 414, 418 (2010) (quoting Yeatts v. Murray, 249 Va. 285, 290, 455 S.E.2d 18, 21 (1995)). It was the duty of Austin's counsel to "lay [her] finger on the error" in the assignments of error presented to this Court. Id. Therefore, Austin did not preserve for appeal her argument that the evidence failed to establish a false pretense.

proof that the accused's intent was to defraud and "'the fraudulent intent must have existed at the time the false pretenses were made, by which the property was obtained.'" Orr v. Commonwealth, 229 Va. 298, 301, 329 S.E.2d 30, 31 (1985) (quoting Riegert v. Commonwealth, 218 Va. 511, 518-19, 237 S.E.2d 803, 808 (1977)).

In order to determine "'whether the intent to defraud existed at the time the act was committed, the conduct and representations of the accused must be examined, since intent is a secret operation of the mind.'" Id. (quoting Riegert, 218 Va. at 518-19, 237 S.E.2d at 808). "Intent may, and most often must, be proven by circumstantial evidence and the reasonable inferences to be drawn from proven facts are within the province of the trier of fact." Fleming v. Commonwealth, 13 Va. App. 349, 353, 412 S.E.2d 180, 183 (1991). "'Intent in fact is the purpose formed in a person's mind and may be, and frequently is, shown by circumstances. It is a state of mind which may be shown by a person's conduct or by his statements.'" Vincent v. Commonwealth, 276 Va. 648, 652-53, 668 S.E.2d 137, 140 (2008) (quoting Hargrave v. Commonwealth, 214 Va. 436, 437, 201 S.E.2d 597, 598 (1974)). "Circumstantial evidence is as acceptable to prove guilt as direct evidence, and in some cases, such as proof of intent or knowledge, it is practically the *only* method of proof." Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980).

Factors this Court has found as probative of fraudulent intent in other criminal offenses where the intent to defraud is an element include evasive conduct, McCary v. Commonwealth, 42 Va. App. 119, 128-29, 590 S.E.2d 110, 115 (2003), and a general lack of communication with the victims about any problems or other reasons asserted for non-payment or non-performance, see id.; Rader v. Commonwealth, 15 Va. App. 325, 330, 423 S.E.2d 207, 211 (1992). Further, evidence that the accused "perpetrated more than one fraud [at] about the same time is relevant to show his fraudulent intent." Mughrabi v. Commonwealth, 38 Va. App. 538, 546, 567 S.E.2d

542, 546 (2002).  See also Bourgeois, 217 Va. at 273, 227 S.E.2d at 718 (Evidence that the accused has perpetrated similar frauds has been held to be admissible as bearing on fraudulent intent.).  We find these factors probative of fraudulent intent in the present case.

Thus, we hold that there is sufficient circumstantial evidence in the record before us for a reasonable fact-finder to conclude that Austin intended to keep the goods without paying for them at the time she obtained the property from each merchant.  Shortly after giving a check to The Eternal Attic and taking the rugs from the store, Austin issued a stop payment on the check without explanation to the merchant and never returned the merchandise or responded to the merchant's attempt to communicate with her.  Moreover, less than two months later, and while on bond for the incident with The Eternal Attic, Austin repeated the same course of action at the Spectacle Shop.

Austin argues that the presence of sufficient funds in her account at the time she handed the check to the merchant indicates her lack of intent to defraud.  While that fact is certainly a factor that a fact-finder may consider, it is not dispositive of the issue of her intent at the time she presented the checks to obtain the merchandise.  In Riegert, our Supreme Court considered the fact that the appellant made arrangements for his check to be honored prior to issuing the check as indicative of the appellant's innocence regarding any fraudulent intent.  Riegert, 218 Va. at 519, 237 S.E.2d at 808.  However, the arrangements to pay the check at the time of issuance and prior to the stop payment was not the only factor considered by the Court in finding the evidence insufficient on the issue of fraudulent intent.  Id. at 520, 237 S.E.2d at 808.  Notably, the appellant in Riegert called the seller of the goods several times to complain about the goods and to try to resolve the matter prior to ordering a stop payment on his check.  Id. at 517-18, 237

S.E.2d at 807.  Thus, <u>Riegert</u> is distinguishable from the case at bar.[2]  Further, Austin conceded during oral argument that the sufficiency of funds in her account to pay the check is only one factor for the court to consider and is not the exclusive factor in this case.

Based on the circumstantial evidence, a reasonable fact-finder could conclude that Austin had the intent to stop payment on the checks and thus defraud The Eternal Attic and the Spectacle Shop at the time she issued the checks and obtained the merchandise.  Austin's subsequent evasive conduct, her failure to communicate with the victims or explain her actions, her failure to return the merchandise, and the fact that she repeated this pattern of behavior within a short time frame are circumstances that support a reasonable conclusion that Austin had a fraudulent intent at the time the transactions occurred.  We therefore find no error in the judgment of the trial court.

<u>Affirmed.</u>

---

[2] The holding in <u>Cunningham v. Commonwealth</u>, 219 Va. 399, 247 S.E.2d 683 (1978), does not change our analysis.  In <u>Cunningham</u>, the appellant agreed to purchase a car and left a check for the purchase price of the car with the dealer.  The appellant did not take possession of the car that day.  <u>Id.</u> at 400, 247 S.E.2d at 684.  After the appellant left the dealer, she went to the bank and ordered a stop payment on the check.  <u>Id.</u> at 401, 247 S.E.2d at 684.  She then returned to the dealer the same day and said she no longer wanted to purchase the car.  However, the next day she again returned to the dealer and stated that she wanted the car and not the return of her check.  The dealer did not know the appellant had stopped payment on the check.  The appellant then took possession of the car.  <u>Id.</u>  The Court found that when "defendant obtained possession of the car by concealing the fact that she had stopped payment on the check, the offense of larceny by false pretenses was complete."  <u>Id.</u> at 403, 247 S.E.2d at 685.

While the appellant in <u>Cunningham</u> stopped payment on the check prior to taking the car, and this supported the finding that she had fraudulent intent, it is not necessary in every case of a stop payment on a check that the stop payment occur prior to the defendant's possession of the property in order to find that he had fraudulent intent.  Intent most often is proven by circumstantial evidence, and a fact-finder may find that the stop payment order on a check provides indicia of fraudulent intent whether the order to stop payment is made prior to or subsequent to the defendant's issuance of the check and taking of the property, so long as the defendant possessed the fraudulent intent at the time he took possession of the property.