# *VIRGINIA:*

*In the Court of Appeals of Virginia on* **Tuesday** *the* **15th** *day of* **September, 2015**.

Angela Maye Holt,                                                                                          Appellant,

  against                    Record No. 1252-14-1
                       Circuit Court Nos. CR13003659-00 and CR13003904-00

Commonwealth of Virginia,                                                                            Appellee.

Upon a Petition for Rehearing En Banc

Before the Full Court

On August 13, 2015 came the appellant, by court-appointed counsel, and filed a petition requesting that the Court set aside the judgment rendered herein on August 4, 2015, and grant a rehearing *en banc* on the issue(s) raised in the petition.

On consideration whereof, the petition for rehearing *en banc* is granted with regard to the issue(s) raised therein, the mandate entered herein on August 4, 2015 is stayed pending the decision of the Court *en banc*, and the appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with the schedule set forth in Rule 5A:35(b).  The appellant shall attach as an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the Court in this matter.  An electronic version of each brief shall be filed with the Court and served on opposing counsel.  In addition, twelve printed copies of each brief shall be filed.  It is further ordered that the appellant shall file an electronic version and twelve additional copies of the appendix

previously filed in this case.[1]

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By: *original order signed by a deputy clerk of the Court of Appeals of Virginia at the direction of the Court*

Deputy Clerk

---

[1] The guidelines for filing electronic briefs and appendices can be found at www.courts.state.va.us/online/vaces/resources/guidelines.pdf.

UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, Chafin and Decker
Argued at Norfolk, Virginia

ANGELA MAYE HOLT

MEMORANDUM OPINION[*] BY
v.        Record No. 1252-14-1        JUDGE TERESA M. CHAFIN
                                       AUGUST 4, 2015

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Jerrauld C. Jones, Judge

J. Barry McCracken, Assistant Public Defender (Office of the Public
Defender, on brief), for appellant.

Elizabeth C. Kiernan, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

At the conclusion of a jury trial held in the Circuit Court of the City of Norfolk, Angela

Maye Holt ("Holt") was convicted of obtaining money by false pretenses in violation of Code

§ 18.2-178 and embezzlement in violation of Code § 18.2-111. On appeal, she challenges the

sufficiency of the evidence supporting her convictions. For the reasons that follow, we affirm

Holt's conviction of obtaining money by false pretenses. However, we find that the evidence

presented at trial was insufficient to support her conviction of embezzlement, and accordingly,

we reverse that conviction.

I. BACKGROUND

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth,

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App.

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

438, 443, 358 S.E.2d 415, 418 (1987)). So viewed, the evidence established that Holt and Anthony Banks ("Banks"), the victim in the present case, began dating in 2012 when Banks was seventeen years old and Holt was twenty-nine years old. Banks and Holt lived together at Holt's mother's house.

In the spring of 2013, Banks agreed to purchase Holt's Chevrolet Suburban to help her make child support payments. Banks began making periodic payments to Holt for the purchase of the vehicle in March 2013. He made a payment to Holt each time he received a paycheck, and Holt's mother observed Banks making some of these payments. Often, Banks would give his entire paycheck to Holt to cover the couple's living expenses as well as his vehicle payment.

Over the course of approximately five months, Banks paid Holt $900 for the Suburban, and Holt signed the title of the vehicle over to him on July 29, 2013. With Holt's permission, Banks did not register the transaction with the Department of Motor Vehicles ("DMV") because it was cheaper for him to keep the vehicle on Holt's automobile insurance policy rather than transfer it to one of his own. Although both parties occasionally drove the Suburban before July 29, 2013, Banks testified that he had physical possession of the vehicle after that date.

On July 16, 2013, Aaron Smalley ("Smalley"), Holt's former boyfriend and the father of her children, was released from incarceration, and he and Holt quickly resumed their romantic relationship. When Smalley came to Holt's mother's house to pick up his children on August 2, 2013,[1] Smalley and Banks had an argument that eventually developed into a physical altercation. As Smalley attempted to leave the house in another car owned by Holt, Banks took the keys of the car to prevent Smalley from driving away with equipment and passes required for Banks's

---

[1] While Banks testified that the altercation occurred on August 3, 2013, he also testified that the altercation occurred on a Friday evening. Holt also testified that the altercation occurred on a Friday. As August 3, 2013, was a Saturday, the altercation likely occurred on August 2, 2013.

- 2 -

employment. Smalley then got into the Suburban and drove away. This altercation effectively ended the romantic relationship between Holt and Banks, and Holt and Smalley were married in December 2013.

Banks decided to record his title to the Suburban with the DMV as soon as possible in order to regain possession of the vehicle. As the altercation between Smalley and Banks occurred on a Friday evening, however, Banks waited until the following Monday to register his title. When he arrived at the DMV, he learned that Holt had obtained a replacement title to the vehicle on August 3, 2013, the day following the altercation, by claiming that the original title to the vehicle had been lost or stolen. Holt's replacement title rendered Banks's original title invalid, and neither the Suburban nor the $900 that Banks paid to Holt were ever returned to him.[2]

At her trial, Holt testified that she never sold the Suburban to Banks. She also claimed that he never paid her any money for the vehicle. Although Holt admitted that she signed the title of the Suburban on July 29, 2013, she explained that she only did so in anticipation of selling the vehicle to a third party. Holt testified that she stored the signed title in a bedside table and that she never signed the title of the Suburban over to Banks. Holt claimed that she obtained a replacement title to the Suburban because she feared the original title had been stolen when she could not locate it following the altercation between Smalley and Banks. The jury rejected Holt's testimony concerning the sale of the vehicle and convicted her of obtaining money by false pretenses and embezzlement, sentencing her to pay a $900 fine for each offense. Holt appealed her convictions to this Court.

---

[2] Banks briefly discussed buying another vehicle from Holt and allowing her to keep the Suburban, but these negotiations failed when Banks did not timely make the initial payment for the other vehicle.

## II. ANALYSIS

On appeal, Holt contends that the evidence presented at trial was insufficient to prove several elements of the offenses of which she was convicted. Specifically, Holt argues that the evidence was insufficient to support her conviction of obtaining money by false pretenses because it failed to establish that she "acted with a fraudulent intent to deprive [Banks] of money or property." She also claims that the evidence was insufficient to establish that she made a false representation to Banks of any "material past and present fact," and she requests that we review this issue under the "ends of justice" exception to Rule 5A:18. Additionally, Holt contends that the evidence was insufficient to support her conviction of embezzlement because it failed to establish that she "converted property over which she had custody or control by virtue of a position of trust."

When considering the sufficiency of the evidence on appeal, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence to support it." Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002); see also McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (*en banc*). Under this standard, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 662, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). It asks instead whether "'*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting Jackson, 443 U.S. at 319). We do not "substitute our judgment for that of the trier of fact" even if our opinion were to differ. Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002). Furthermore, as previously stated, we review the evidence and all reasonable inferences derived

- 4 -

from it in the light most favorable to the Commonwealth, the prevailing party at trial. See, e.g., Archer, 26 Va. App. at 11, 492 S.E.2d at 831.

When we review the evidence under this deferential standard, we conclude that it was sufficient to support Holt's conviction of obtaining money by false pretenses. We agree with Holt, however, that the evidence was insufficient to prove that she fraudulently converted any property that had been entrusted to her, and therefore, we conclude that the evidence was insufficient to support her conviction of embezzlement.

A. THE EVIDENCE WAS SUFFICIENT TO SUPPORT HOLT'S CONVICTION OF OBTAINING MONEY BY FALSE PRETENSES

Code § 18.2-178(A) provides, in pertinent part, that "[i]f any person obtain, by any false pretense or token, from any person, with intent to defraud, money, a gift certificate or other property that may be the subject of larceny, he shall be deemed guilty of larceny thereof . . . ." To sustain a conviction for larceny by false pretenses,

> the Commonwealth must prove: "(1) an intent to defraud; (2) an actual fraud; (3) use of false pretenses for the purpose of perpetrating the fraud; and (4) accomplishment of the fraud by means of the false pretenses used for the purpose, that is, the false pretenses to some degree must have induced the owner to part with his property."

Riegert v. Commonwealth, 218 Va. 511, 518, 237 S.E.2d 803, 807 (1977) (quoting Bourgeois v. Commonwealth, 217 Va. 268, 272, 227 S.E.2d 714, 717 (1976)); see also Austin v. Commonwealth, 60 Va. App. 60, 66, 723 S.E.2d 633, 636 (2012).

## 1. INTENT TO DEFRAUD

A conviction of larceny by false pretenses requires proof that the accused intended to defraud the victim. Riegert, 218 Va. at 518, 237 S.E.2d at 807 (citing Bourgeois, 217 Va. at 272, 227 S.E.2d at 717). Additionally, the Commonwealth must prove that the accused's fraudulent intent existed at the same time that he or she used false pretenses to obtain property from the

victim.  See id.  To have an intent to defraud, the accused must intend "to 'deceive another person, and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter, or terminate a right, obligation or power with reference to property.'"  Bray v. Commonwealth, 9 Va. App. 417, 422, 388 S.E.2d 837, 839 (1990) (quoting Black's Law Dictionary 381 (5th ed. 1979)).  "'Intent in fact is the purpose formed in a person's mind and may be, and frequently is, shown by circumstances.  It is a state of mind which may be shown by a person's conduct or by his statements.'"  Austin, 60 Va. App. at 66, 723 S.E.2d at 636 (quoting Vincent v. Commonwealth, 276 Va. 648, 652-53, 668 S.E.2d 137, 140 (2008)).  "[W]hether the required intent exists is generally a question for the trier of fact."  Nobles v. Commonwealth, 218 Va. 548, 551, 238 S.E.2d 808, 810 (1977).

"Circumstantial evidence is as acceptable to prove guilt as direct evidence, and in some cases, such as proof of intent or knowledge, it is practically the *only* method of proof."  Austin, 60 Va. App. at 66, 723 S.E.2d at 636 (emphasis in original) (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980)).  When the facts and circumstances of the present case are considered in the light most favorable to the Commonwealth, the evidence presented at trial was sufficient to establish that Holt intended to defraud Banks when she agreed to sell him the Suburban and accepted payments from him for the purchase of the vehicle.

When Holt and Banks began their romantic relationship, Holt was more than ten years older than Banks and Banks was a minor.  Banks financially supported Holt, and she eventually persuaded him to purchase the Suburban from her to help her pay child support.  When Smalley, Holt's former boyfriend and the father of her children, was released from incarceration, she quickly rekindled her romantic relationship with him and they were married within five months. Based on these circumstances, the jury could have reasonably inferred that Holt never intended to remain in a long-term romantic relationship with Banks and that their relationship was a

pretext on her part that allowed her to take advantage of Banks's relative youth and inexperience to obtain financial support from him.

Although Holt signed the title of the Suburban over to Banks on July 29, 2013, she knew that Banks did not plan to register the transaction concerning the Suburban with the DMV for insurance purposes. On August 2, 2013, however, a mere four days after Holt signed the title of the Suburban over to Banks, Smalley came to Holt's mother's house and drove away in the Suburban. Instead of persuading Smalley to return the Suburban to Banks, Holt went to the DMV the next day and obtained a replacement title to the Suburban by claiming that the original title was lost or stolen. By doing so, she invalidated the original title to the vehicle held by Banks, and she never returned the Suburban to Banks or refunded the money he paid to her for the vehicle.

Given these circumstances, the jury reasonably inferred that Holt never intended to sell the Suburban to Banks. She reclaimed both physical possession of and title to the Suburban within days of transferring ownership of the vehicle to him. The jury could have concluded that Holt lied to Banks when she told him that she would sell him the Suburban in order to induce him to make periodic payments to her to allegedly purchase the vehicle and that she never intended to actually sell the vehicle to him.[3] At a minimum, the jury could have inferred that Holt had no intention to transfer the Suburban to Banks when she accepted his final payment for

---

[3] While Holt testified that she never sold the Suburban to Banks, accepted payments from him for the vehicle, or signed the title of the vehicle over to him, the jury did not believe her testimony. "The credibility of the witnesses and the weight accorded the evidence are matters *solely* for the fact finder who has the opportunity to see and hear that evidence as it is presented." Elliott v. Commonwealth, 277 Va. 457, 462, 675 S.E.2d 178, 181 (2009) (emphasis added). The jury was "at liberty to discount [Holt's] self-serving statements as little more than lying to conceal [her] guilt, and could treat such prevarications as affirmative evidence of guilt." Armstead v. Commonwealth, 56 Va. App. 569, 581, 695 S.E.2d 561, 567 (2010) (citation and internal quotation marks omitted).

- 7 -

the vehicle on or around July 29, 2013, because she reclaimed both possession of and title to the vehicle days later. Accordingly, we conclude that the evidence presented was sufficient to establish that Holt intended to defraud Banks when she agreed to sell him the Suburban and accepted payments from him for the purchase of that vehicle.

## 2. FALSE PRETENSES

The Commonwealth must prove that the defendant used "false pretenses for the purpose of perpetrating the fraud" in order to sustain a conviction under Code § 18.2-178. See Riegert, 218 Va. at 518, 237 S.E.2d at 807.

> A criminal false pretense has been defined as follows:
>
> "[T]he false representation of a past or existing fact, whether by oral or written words or conduct, which is calculated to deceive, intended to deceive, and does in fact deceive, and by means of which one person obtains value from another without compensation. According to the definition, the false pretense must be a representation as to an existing fact or past event. False representations amounting to mere promises or statements of intention have reference to future events and are not criminal within the statute, even though they induce the party defrauded to part with his property. But if false representations are made, some of which refer to existing facts or past events, while others refer solely to future events, a conviction may be had if it is shown that any of the representations as to existing facts induced the complaining witness to part with his property."

Parker v. Commonwealth, 275 Va. 150, 154, 654 S.E.2d 580, 582 (2008) (quoting Hubbard v. Commonwealth, 201 Va. 61, 66, 109 S.E.2d 100, 104 (1959)).

Holt argues that the Commonwealth failed to prove that she made a false representation of an existing fact or past event that induced Banks to part with the $900 he paid for the Suburban. Holt contends that even if she falsely represented that she would sell the Suburban to Banks, such a representation constituted a promise or a reference to a future event, and therefore, was insufficient to support her conviction of larceny by false pretenses. While Holt did not

present this argument to the trial court, she requests that we consider this issue under the "ends of justice" exception to Rule 5A:18.

Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." "'The ends of justice exception is narrow and is to be used sparingly,'" and applies only in the extraordinary situation where a miscarriage of justice has occurred. Redman v. Commonwealth, 25 Va. App. 215, 220-21, 487 S.E.2d 289, 272 (1997) (quoting Brown v. Commonwealth, 8 Va. App. 126, 132, 380 S.E.2d 8, 10 (1989)). "In order to show that a miscarriage of justice has occurred, thereby invoking the ends of justice exception, the appellant must demonstrate that he or she was convicted for conduct that was not a criminal offense or the record *must affirmatively prove* that an element of the offense did not occur." Id. at 221-22, 487 S.E.2d at 273 (emphasis added).

"In order to invoke the ends of justice exception when sufficiency of the evidence has been raised for the first time on appeal, an appellant must do more than show that the Commonwealth *failed* to prove an element or elements of the offense." Id. at 221, 487 S.E.2d at 272 (emphasis in original). "In order to avail oneself of the exception, [the appellant] must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." Id. (emphasis in original). "Therefore, 'in examining a case for miscarriage of justice, we do not simply review the sufficiency of the evidence under the usual standard, but instead determine whether the record contains affirmative evidence of innocence or lack of a criminal offense.'" Flanagan v. Commonwealth, 58 Va. App. 682, 695, 714 S.E.2d 212, 218 (2011) (quoting Wheeler v. Commonwealth, 44 Va. App. 689, 692, 607 S.E.2d 133, 135 (2005)).

While the Commonwealth *may* have failed to prove a specific representation made by Holt referencing an existing fact or past event, the record does not affirmatively prove that Holt failed to make such a representation.  In fact, the record implies that Holt made a false representation concerning an existing fact.  She represented that the Suburban was actually for sale when she persuaded Banks to purchase the vehicle and make payments to her for that purpose.  Although Holt promised that she would sell the Suburban to Banks in the future when he had completed all of his installment payments and paid her the full purchase price of the vehicle, Banks had to rely to some degree on Holt's representation that the Suburban was actually for sale at the time when he agreed to purchase it and made payments for the vehicle.  See Parker, 275 Va. at 154, 654 S.E.2d at 582 ("'[I]f false representations are made, some of which refer to existing facts or past events, while others refer solely to future events, a conviction may be had if it is shown that any of the representations as to existing facts induced the complaining witness to part with his property.'" (quoting Hubbard, 201 Va. at 66, 109 S.E.2d at 104)).

At best, the Commonwealth's failure to present additional evidence concerning the specific false pretenses that Holt used to defraud Banks only demonstrates that a miscarriage of justice *may* have occurred, not that a miscarriage of justice *did* occur.  See Redman, 25 Va. App. at 223, 487 S.E.2d at 273.  As the record fails to affirmatively prove that Holt did not make a false representation of an existing fact or past event and implies that she actually made such a statement, we decline to apply the ends of justice exception to Rule 5A:18 to her argument concerning this issue, and therefore, do not consider her argument that the evidence was insufficient to prove that she used false pretenses to perpetrate the fraud at issue in this case.

B. THE EVIDENCE WAS INSUFFICIENT TO SUPPORT HOLT'S CONVICTION OF EMBEZZLEMENT

Code § 18.2-111 provides, in pertinent part, that "[i]f any person wrongfully and fraudulently use, dispose of, conceal or embezzle any . . . personal property, tangible or intangible, . . . which shall have been entrusted or delivered to him by another . . . he shall be guilty of embezzlement." To sustain a conviction under this statute, "the Commonwealth must prove that the accused 'wrongfully appropriated to [her] use or benefit, with the intent to deprive the owner thereof, the property *entrusted to [her]*.'" Brown v. Commonwealth, 56 Va. App. 178, 185-86, 692 S.E.2d 271, 275 (2010) (quoting Dove v. Commonwealth, 41 Va. App. 571, 577, 586 S.E.2d 890, 893 (2003)) (emphasis added). "[T]he Commonwealth must prove that the [accused] was entrusted with the property of another," and a "formal fiduciary relationship is not necessary" between the parties. Chiang v. Commonwealth, 6 Va. App. 13, 17, 365 S.E.2d 778, 780 (1988). "To entrust is '[t]o give (a person) the responsibility for something . . . after establishing a confidential relationship.'" Brown, 56 Va. App. at 186, 692 S.E.2d at 275 (quoting Black's Law Dictionary 574 (8th ed. 2004)).

In the present case, Holt contends that the evidence was insufficient to support her conviction of embezzlement because the Suburban was not entrusted to her care at the time that it was wrongfully appropriated. The Commonwealth, however, argues that Holt was entrusted with the Suburban when Banks did not record the change of its title with the DMV and that the vehicle remained entrusted to her when she obtained a replacement title that invalidated Banks's title and thereby deprived him of ownership of the vehicle. We agree with Holt's argument.

Banks obtained title to the Suburban on July 29, 2013, and he testified that he had primary physical possession of the vehicle after that date. Although he failed to record the change of title with the DMV, Banks did not intend for Holt to maintain an ownership interest in

- 11 -

the Suburban. Rather, he did not record the transaction for insurance purposes. No evidence in the record indicated that Banks believed that Holt still owned the Suburban after she signed the title of the vehicle over to him, even though the title was still officially recorded in her name. For all practical purposes, Banks owned the Suburban when Smalley took it on August 2, 2013,[4] and the vehicle was no longer in Holt's physical custody or control on that date and was not entrusted to her care in any way.

Similarly, the Suburban was not in Holt's custody or control when she obtained the replacement title to it on August 4, 2013. While Holt was still the registered title holder of the vehicle, her status as such did not establish that the vehicle was in any way entrusted to her care. Banks had not allowed her to use the vehicle at that time or otherwise made her responsible for it. Although she had the ability to deprive Banks of ownership of the Suburban by obtaining a replacement title, she could only do so by fraudulently representing that she was still the owner of the vehicle and that its original title had been lost or stolen. The Suburban was only officially registered in Holt's name for insurance reasons, and the vehicle was not entrusted to her for any purpose.

As the Suburban was not entrusted to Holt at the time that it was wrongfully appropriated, we conclude that the evidence presented at trial was insufficient to support Holt's conviction of embezzlement.

---

[4] Typically, "'[t]he owner of an automobile is the party who has legal title to it.'" Bolden v. Commonwealth, 28 Va. App. 488, 492, 507 S.E.2d 84, 86 (1998) (quoting Hall, Inc. v. Empire Fire & Marine Ins. Co., 248 Va. 307, 309, 448 S.E.2d 633, 635 (1994)). In certain circumstances, however, other documentation of a sale can effectively provide sufficient indicia of ownership of an automobile in the absence of legal title. See Shropshire v. Commonwealth, 40 Va. App. 34, 40, 577 S.E.2d 521, 524 (2003) ("title might be sufficiently proven by a conditional sale contract, promissory note and security agreement or similar evidence"). In this case, Banks's title to the Suburban established that he was the owner of the vehicle even though the title was still officially recorded in Holt's name.

### III. CONCLUSION

In summary, we conclude that the evidence presented was sufficient to support Holt's conviction of obtaining money by false pretenses. Holt's fraudulent intent could be inferred from the totality of the circumstances of the case, and no affirmative evidence in the record established that she did not falsely represent a present fact or past event that induced Banks to pay her for the Suburban. Additionally, we conclude that the evidence presented was insufficient to support Holt's conviction of embezzlement because it failed to prove that the Suburban was entrusted to her at the time that it was wrongly appropriated. Accordingly, we affirm Holt's conviction of obtaining money by false pretenses and reverse her conviction of embezzlement.

<u>Affirmed in part, and reversed in part.</u>

Petty, J., concurring, in part, and dissenting, in part.

I agree with the majority that the evidence was insufficient to support Holt's conviction of embezzlement and concur with the reversal of that conviction. I would further conclude, however, that the evidence was also insufficient to support Holt's conviction of larceny by false pretenses. Although I recognize that Holt did not explicitly mention the false pretense element of the offense in her motion to strike, I would apply the "ends of justice" exception to Rule 5A:18 and reverse that conviction also. Accordingly, I respectfully dissent.

As the majority notes, one of the elements of the crime of larceny by criminal false pretense is the use of a false pretense for the purpose of perpetrating the fraud. "Moreover, the false pretense must be a representation as to an existing fact or a past event." Bourgeois v. Commonwealth, 217 Va. 268, 272, 227 S.E.2d 714, 717 (1976). "'False representations amounting to mere promises or statements of intention have reference to future events and are not criminal within the statute, even though they induce the party defrauded to part with his property.'" Parker v. Commonwealth, 275 Va. 150, 154, 654 S.E.2d 580, 582 (2008) (quoting Hubbard v. Commonwealth, 201 Va. 61, 66, 109 S.E.2d 100, 104 (1959)).

The majority acknowledges that the Commonwealth failed to prove a specific representation by Holt of an existing fact or past event. The Commonwealth specifically argued that "[the] false representation was that she would give over the car to Mr. Banks at the end of the transaction." This was a "mere promise[] or statement[] of intention [with] reference to future events" and cannot be the basis for false pretenses even if the statement "induce[d] the party defrauded to part with his property." See Parker, 275 Va. at 154, 654 S.E.2d at 582. The majority suggests that Banks relied on Holt's representation that the Suburban was for sale and that she would give it to him when he paid the money. But this is merely another way of saying Holt induced Banks to part with his money by a promise or statement of intention with reference

- 14 -

to future events. It does not qualify as a representation of an existing fact or past event. I note also that to the extent Banks relied on this promise, his reliance was well placed. Banks himself testified that he had possession of the Suburban after July 29, 2013 and that the title was signed over to him on that day. Thus, whatever else happened after that, the sale was completed.

Simply put, misrepresentation of an intention to do something in the future cannot be the predicate representation for false pretenses. However, that was exactly what the Commonwealth argued was the false pretense it established. As a result, Holt was convicted for conduct that was not a crime. "Accordingly, there was error in the judgment appealed from and application of the ends of justice exception is necessary to avoid a grave injustice." Ali v. Commonwealth, 280 Va. 665, 671, 701 S.E.2d 64, 68 (2010). I would apply the ends of justice exception to address Holt's argument that no criminal false representation was made. Because the record supports her position, I would reverse her conviction.

The majority, however, denies the "ends of justice" exception on the basis that Holt did not affirmatively prove that an element of the offense did not occur. The majority correctly states that to invoke the ends of justice exception, "the appellant must demonstrate that he or she was convicted for conduct that was not a criminal offense or the record must affirmatively prove that an element of the offense did not occur." Redman v. Commonwealth, 25 Va. App. 215, 220-21, 487 S.E.2d 289, 272 (1997). Further, we must "determine whether the record contains affirmative evidence of innocence or lack of a criminal offense.'" Flanagan v. Commonwealth, 58 Va. App. 682, 695, 714 S.E.2d 212, 218 (2011).

Holt was convicted for conduct that was not a criminal offense because she made no false representation of a present fact or past event. Further, the record contains affirmative evidence that no such false representation occurred. Holt, Holt's mother, and Banks all testified about the exchange of money for the Suburban. After all of the testimony, the only statement the

- 15 -

Commonwealth pointed to as a false representation was Holt's intent to not deliver the Suburban in the future. "The non-offense prong of the ends of justice analysis is similar to a legal impossibility analysis." Masika v. Commonwealth, 63 Va. App. 330, 335, 757 S.E.2d 571, 573 (2014) ("Legal impossibility occurs when a defendant's actions would not constitute a crime, even if they were carried out fully and exactly as he intended."). Here, it is a legal impossibility to be guilty of larceny by false pretenses when the false representation made was one of future intent to complete the contract, rather than one of existing fact or past event.

In a strange twist, the majority would place on Holt the impossible burden of affirmatively proving a negative—that she did not make a false representation. Rather, I believe our precedent requires us to determine from the record that the element was affirmatively addressed and the evidence supporting the element was insufficient. Here, "the evidence clearly and affirmatively shows that an element of one of the crimes of which [appellant] was convicted did not occur." Ali, 280 Va. at 671, 701 S.E.2d at 68. Consequently, I would have reviewed the appeal under the "ends of justice" exception to Rule 5A:18 and reversed Holt's conviction for larceny by false pretenses.