COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Chaney, Raphael and Callins
Argued at Richmond, Virginia

JESUS LAMONT TURNER

v.      Record No. 1328-21-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE VERNIDA R. CHANEY
APRIL 11, 2023

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
W. Reilly Marchant, Judge

(Maureen L. White, on brief), for appellant. Appellant submitting
on brief.

Lauren C. Campbell, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

A jury convicted Jesus Lamont Turner (Turner) of first-degree murder in violation of Code

§ 18.2-32, malicious wounding in violation of Code § 18.2-51, and two charges of using a firearm

in the commission of a felony in violation of Code § 18.2-53.1. On appeal, Turner argues that the

evidence was insufficient to identify him as one of the perpetrators. For the following reasons, this

Court affirms the trial court's judgment.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party" in the trial court. *McGowan v.*

*Commonwealth*, 72 Va. App. 513, 516 (2020) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472

---

* This opinion is not designated for publication. *See* Code § 17.1-413.

(2018)).  We "regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence."  *Id.* (citing *Gerald*, 295 Va. at 473).

In May 2019, brothers Jaquan Evans (Jaquan) and Temon Evans (Temon) were at a park playing basketball with Tony Carter (Tony) when a group of about five armed men approached them and lined up on the side of the basketball court.  Jaquan ran away from the court while Tony ran to get his handbag near the side of the court.  Tony then stood off the court beside Temon.  Temon testified that he saw that the other men all had guns.  Temon heard one of the armed men say, "[T]hat's the boy that he shot at."  Tony then removed a gun from his bag, and the other men all started shooting in the direction of Tony and Temon.  Tony fired back twice in self-defense and in defense of his one-year-old child and his child's mother.

During the shooting, a bullet struck and killed bystander M.D.,[1] the nine-year-old cousin of Temon and Jaquan.  Another child, 11-year-old J.M., was also shot.  J.M.'s gunshot wounds were treated at the hospital, and he survived.

At trial, Tony and Jaquan identified Turner as one of the men who approached them on the basketball court.  Temon did not identify Turner as a perpetrator.  Jaquan testified that one man in the group was "clutching" in his waistband what Jaquan believed to be a gun, and he identified Turner as that man.  Jaquan also testified that Tony was the only person he actually saw with a gun.

On cross-examination, Jaquan acknowledged that at the prior trial of Turner's co-defendant, Jermaine Davis (Davis), he testified that he did not recognize Turner at all.  Jaquan also acknowledged that at Davis's trial—six months before Turner's trial—he identified Davis, whom he knew from high school, as the only man he saw clutching a gun in his waistband.  Jaquan testified that he also recognized another man in the group as someone he knew from high school, whom he

_____

[1] For the sake of the victims' and their families' privacy, the victims are identified in this opinion by their initials.

identified as Quinshawn Betts (Betts). On re-direct examination, Jaquan acknowledged that at the prior trials of Davis and Betts, he testified that he saw at least three men "clutching" as if they had a gun, and he identified Davis and Betts as two of the men clutching guns.

When Tony was called to testify, he refused to answer the Commonwealth's questions until the court ordered him to answer and advised him that he could be found in contempt for refusing to answer. When the Commonwealth pointed Turner out in the courtroom and asked, "Do you know the defendant," Tony responded, "Nope." But Tony subsequently clarified that he recognized Turner but did not "know" him as he knows his family and friends. Tony also testified that he recognized Turner as someone called "J.T." who "grew up around the same neighborhood." Tony initially testified that he did not remember whether he saw Turner in the park on the day of the shooting. But after reviewing his prior testimony to refresh his recollection, Tony testified that at the time of the shooting, he recognized Turner in the group who approached him on the basketball court and "locked eyes" with him.

When Tony repeatedly gave non-responsive answers to the Commonwealth's questions, the trial court allowed the Commonwealth to question him as an adverse witness. Subsequently, at Turner's request, the trial court instructed the jury that "[y]ou shall consider the fact that [Tony] made prior statements inconsistent with his testimony in this case only for the purpose of showing his contradictory testimony."

After the Commonwealth rested its case, Turner moved to strike and argued, in relevant part, that the evidence was insufficient to identify Turner as one of the perpetrators. In support of his motion to strike, Turner argued to the trial court that "[Tony] did not identify Jesus Turner, J.T., . . . as having been at the park at any given time. In fact, he said exactly the contrary. He didn't see the person. He didn't recall." Turner further contended:

> [Tony] did not identify Jesus Turner as having been out there, having
> seen him that day, or any such testimony until the Commonwealth

attorney, as a last resort, asked Your Honor to qualify him and examine him as an adverse witness. That's the only reason that they did it.

When they did it, Your Honor instructed them that the only evidentiary value that such testimony would have is to discredit him. It would be for impeachment purposes and not to establish that whatever he said on a prior occasion was true. It was only at that point that there was any mention made by [Tony] that he saw J.T. out at the park on that day.

. . . .

[H]e simply didn't say anything identifying Jesus Turner as having been at the park, having a firearm and firing a firearm until after he is qualified as an adverse witness.

Turner also argued that Jaquan's testimony identifying Turner was inherently incredible. The trial court explicitly rejected Turner's contention that Jaquan's testimony was inherently incredible and denied the motion to strike.

The jury convicted Turner on all charges. In accordance with the punishment fixed by the jury, the trial court sentenced Turner to active incarceration for a total period of 33 years: 20 years for first-degree murder, 5 years for malicious wounding, 3 years for using a firearm in the commission of murder, and 5 years for using a firearm in the commission of malicious wounding. This appeal followed.

ANALYSIS

Turner argues on appeal solely that the evidence was insufficient to prove that he was one of the perpetrators because Jaquan was the only witness who identified him, and his testimony was inherently incredible. When an appellant challenges the sufficiency of the evidence to support a criminal conviction, this Court "reviews the evidence in the light most favorable to the Commonwealth, as the prevailing party at trial, and considers all inferences fairly deducible from that evidence." *Commonwealth v. Herring*, 288 Va. 59, 66 (2014) (quoting *Allen v. Commonwealth*, 287 Va. 68, 72 (2014)). At issue on appeal is "whether any rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth v. Cady*, 300 Va. 325, 329 (2021) (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). The trial court's judgment will be affirmed "unless it is plainly wrong or without evidence to support it." *Sarka v. Commonwealth*, 73 Va. App. 56, 62 (2021) (quoting *Austin v. Commonwealth*, 60 Va. App. 60, 65 (2012)); *see also* Code § 8.01-680.

On appellate review, this Court defers to the fact-finder's credibility determinations unless the witness's testimony is "inherently incredible, or so contrary to human experience as to render it unworthy of belief." *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019) (quoting *Johnson v. Commonwealth*, 58 Va. App. 303, 315 (2011)). "Determining the credibility of witnesses who give conflicting accounts is within the exclusive province of the jury, which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993).

"A legal determination that a witness is inherently incredible is very different from the mere identification of inconsistencies in a witness' testimony or statements. Testimony may be contradictory or contain inconsistencies without rising to the level of being inherently incredible as a matter of law." *Kelley*, 69 Va. App. at 626 (citing *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)). Similarly, a motive to lie does not make a witness's testimony inherently incredible. *See id.* at 627. Instead, all such circumstances are appropriately weighed and "resolved by the fact finder," as part of the overall credibility determination, not the appellate court on review. *Id.* at 626 (quoting *Towler v. Commonwealth*, 59 Va. App. 284, 292 (2011)); *Juniper*, 271 Va. at 415 (holding that a witness's delay in reporting knowledge of a case or inconsistencies in testimony are "appropriately weighed as part of the *entire issue* of witness credibility, which is left to the jury to determine" (emphasis added)).

Turner's sufficiency argument is predicated on his contention that Jaquan was the only witness who identified Turner as one of the perpetrators.[2] Although Turner acknowledges that Tony was an eyewitness to the shooting, Turner contends that Tony "never identified Jesus Turner as one of the men present and/or shooting at the park on the day in question." However, Turner's contention is contradicted by the evidence. Tony testified that he "locked eyes" with one of the perpetrators whose face he recognized from having grown up in the same neighborhood. Tony further testified that this perpetrator was called "J.T.," and he identified Jesus Turner as this perpetrator. Although Tony initially testified that he did not remember whether he saw Turner in the park on the day of the shooting, he subsequently identified Turner as one of the perpetrators after reviewing his prior testimony to refresh his recollection. The Commonwealth eventually questioned Tony as an adverse witness, and the trial court instructed the jury that Tony's prior inconsistent statements could only be considered as showing his contradictory testimony. But Tony's identification of Turner as one of the perpetrators was not a prior statement inconsistent with his testimony in this case. Tony affirmatively testified at Turner's trial that Turner was one of the perpetrators. Thus, even if Jaquan's identification of Turner is disregarded, Tony's testimony provided a sufficient factual basis to support the jury's finding that Turner was one of the perpetrators.

---

[2] Turner's single assignment of error states:

> The trial court erred in upholding Turner's convictions for murder, malicious wounding and the use of a firearm in each of those offenses because the Commonwealth failed to prove that Jesus Turner was present at the time of the offenses *as only one witness identified him as being there and his testimony inherently incredible.*

(Emphasis added).

Even if Jaquan's in-court identification of Turner as one of the perpetrators was uncorroborated, the record does not justify a finding that Jaquan's testimony is inherently incredible. Turner contends that Jaquan's testimony was "'manifestly false'" because Jaquan was "exceedingly distressed" about the shooting of his cousin, M.D., and this motivated him to identify "anyone who he thought might be involved to account for her death." Turner argues that this explains why Jaquan testified that Turner was the only one with a gun but inconsistently testified at co-defendant Davis's trial that he saw Davis with a gun. However, a motive to lie does not render a witness's testimony inherently incredible. *See Kelley*, 69 Va. App. at 626. And it was within the province of the jury to resolve conflicts in Jaquan's testimony because the inconsistencies did not render his identification of Turner inherently incredible. *See Lea*, 16 Va. App. at 304.

## CONCLUSION

The evidence is sufficient to support the jury's finding that Turner was one of the perpetrators. Therefore, this Court affirms Turner's convictions.

*Affirmed*.